14222

HUDSON v. INMAN *ET AL.*
PEOPLES NATIONAL BANK OF GREENVILLE v. HUDSON
*ET AL.*

(184 S. E., 102)

*Messrs. Morgan & Cothran,* for appellant,

*Messrs. Blythe & Bonham, Price & Poag, Hodges & Hodges* and *Vane G. Hawkins,* for respondents.

February 10, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In an action between Peoples National Bank of Greenville, S. C., as executor of the estate of D. D. Davenport, plaintiff, against E. S. Hudson, as executor of the estate of E. P. Hudson, and as trustee for Milas E. Hudson *et al.,* defendants, it was decreed that 100 acres of land in Greenville County, which had come into the possession of E. S. Hudson through the will of his father, Ed P. Hudson, and a deed executed but not delivered at the date of the execution of the will by the said Ed P. Hudson to the said E. S. Hudson, should be sold at public auction by the Master for Greenville County to the highest bidder for cash. The original decree provided, if any party to the action, or any child of the son, E. S. Hudson, should bid in the property, they would not be required to deposit at the time of the making of their bid a 5 per cent. deposit required of all other bidders. The land was offered for sale on sales day in February, 1935, and held open under the Act of 1933 (Act May 16, 1933, 38 St. at Large, p. 511, § 1, amending Act April 11, 1932, 37 St. at Large, p. 1529, § 1) for 30 days. During those 30 days only Helen Hudson, the appellant herein, J. P. Rosemond and Mills Hunter, entered bids. Appellant was the successful bidder, but did not comply with her bid, and the land was resold upon the same terms and conditions on a subsequent sales day and held open for 30 days. No one outside of the Hudson family, J. P. Rosemond, and Mills Hunter entered any bid. Again the terms of the sale were not complied with, and thereupon the attorney for plaintiff, under a proper proceeding, procured the decree for the sale of the land to be amended, so as to delete from the original decree any exception with reference to requiring a deposit by bidders; said amended decree providing as follows:

" * * * The successful bidder at the time the bid is accepted shall be required to make a deposit of cash or certified check in a sum not exceeding 5 per cent of the amount of his bid, as evidence of his good faith. Should said purchaser not comply with his bid within a period of ten days, said deposit is to be forfeited and applied to the payment of the cost of resale and the balance on the indebtedness proved against the estate and the Master shall thereafter readvertise and resell the premises at the risk of the former purchaser."

Under this amended decree the land was put up for sale on sales day in July, 1935, and held open for 30 days; that is, until 12 m., July 31, 1935. In the office of the Master on said 31st day of July, 1935, and between 11:30 a. m., and 12 m., the following bids were offered upon the said 100 acres of land, to wit:

| | |
|---|---|
| Appellant, through her attorney | $5,000.00 |
| J. P. Rosemond, through his attorney | 5,100.00 |
| Mills Hunter | 6,000.00 |
| J. P. Rosemond, through attorney | 6,100.00 |
| Mills Hunter | 7,000.00 |
| Appellant, through her attorney | 6,105.00 |

The decree, in addition to the terms hereinbefore quoted, contained the following: "The terms of sale to be cash, the purchaser to pay for papers and stamps."

The terms of the sale, as set out in the advertisement of the Master of the sale, contained the following provision: "Each succssful bidder, at the time the bid is accepted, will be required to deposit with the Master the sum of 5 per cent of the amount of bid in cash or certified check as evidence of his good faith."

It is uncontroverted that the only bidder making a legal deposit with the Master at the time of the bidding was the appellant herein. J. P. Rosemond had deposited with the Master at a former sale a check for $180.00, which had not been returned to him, and Mills Hunter, either during the

bidding or following his bid of $7,000.00, tendered to the Master his personal check on the People National Bank, Greenville, S. C., payable to the order of cash or to the Master, in the sum of $350.00, and the Master accepted same, but said check was not certified, and at the time of issuing the check Mills Hunter did not have money on deposit with said bank sufficient to pay said check. At the time the attorney for appellant bid, he had the actual money with him, and handed to the Master sufficient money to cover 5 per cent. of his bid of $6,105.00. The attorney for appellant took the position at the bidding that Mills Hunter, not having complied with the terms of the decree of sale and as set out in the advertisement, was not entitled to have his bid considered as the highest bid, and that the highest legal bid was the $6,105.00 which he made for appellant. The Master retained both the money handed him by the attorney for appellant and the check of Mills Hunter, which check was deposited by the Master for collection, and on the following day it was returned for "insufficient funds." Mills Hunter then added to his name on the check the words "Attorney in Fact," and this check was then honored by the bank on the second day after the bidding.

Under the foregoing statement of facts, appellant herein brought a petition in the cause making E. Inman, as Master, and J. P. Rosemond and Mills Hunter, the other two bidders, respondents, praying that this Court order and direct the Master to receive her bid as the highest bid, and that she be declared the successful bidder at the last-mentioned sale on July 31, 1935. J. P. Rosemond did not answer, but Mills Hunter answered, alleging that, with the consent of the Master, he gave a check for $350.00 to bind his bid, and that, before the petition was filed and the rule based upon the petition was issued, the Master had collected the money on the check, and then had the $350.00, and further answered that he was acting for the protection of his wife, for whom he is committee, and that his bid amounted to $895.00 more than the bid of petitioner-ap-

pellant, and that it was to the best interest of the creditors that his bid be accepted.

The matter came on to be heard before Hon. G. Dewey Oxner, resident Judge, who found, as a matter of fact, that appellant was the only bidder who had complied with the terms of the decree of sale and the advertisement by the Master of the sale, and held, as a matter of law, that the Master had no power to alter the terms of the decree. However, after reaching this conclusion, which was the only issue raised by the pleadings, he reached the further conclusion that, due to the fact that the Master accepted the check of Hunter during the bidding and proceeded to collect the same, the sale had been so irregular, resulting possibly in a chilling of the bidding, that both the bid of appellant and Hunter should be rejected and that there should be a resale of the property at some subsequent salesday, and he so ordered, citing as authority therefor the cases of *In re Ragland,* 172 S. C., 544, 174 S. E., 592, 594; *Poole v. Insurance Company,* 174 S. C., 150, 177 S. E., 24, 27.

The custom of requiring bidders at judicial public sales to make a deposit of a small percentage of the bid to be forfeited as a penalty in case of noncompliance with the bid no doubt came about through the failure of the bidder to comply, and thus, when the bidder could not be forced to comply with the .bid by reason of financial irresponsibility, loss of time was incurred, and the expense of readvertising entailed. And the custom requiring that the deposit be made with actual money or certified check no doubt had its birth from individual's checks being returned and not paid by reason of "Insufficient Funds." To allow a person who is not financially responsible to give a worthless check as a deposit places such person in the advantageous position of complying with his bid at his pleasure. If such person can resell the property bid in at a profit, or finds that he has made a profitable purchase, then he makes his check good and complies with his bid; otherwise he does nothing and there is no redress.

In the case at bar, the decree ordering a sale of the property provided that there be a deposit in cash or by certified check by the successful bidder. The advertisement of the sale of the property carried the information of this requirement, and, regardless of what the Master did, a bidder not complying with the terms of the decree and the advertisement will not be heard to complain that he was lulled into security in not being required publicly to comply with the terms of the decree and advertisement of the sale of the property. There is no claim on the part of respondent that he was not aware of the terms and conditions provided in the decree of sale; and, before the bidding commenced, the Master gave notice that he intended to enforce a strict compliance, although he did not do so. Let it be understood at this juncture that we are not reflecting on the Master who handled this transaction. He did not have an opportunity of giving mature thought to the matter.

The respondent Hunter was charged with notice of the terms of the decree of sale, and the Master had no authority to vary these terms. As was stated in *Parrott v. Dickson,* 151 S. C., 114, 148 S. E., 704, 706: "The order of sale was the chart which guided the Clerk of Court in making the sales therein ordered. * * * The order of sale was a public document, and all bidders, as well as other persons, were charged with notice of its terms."

Again in *Calder v. Maxwell,* 99 S. C., 115, 82 S. E., 997, a case involving a judicial sale, Mr. Justice Gage, speaking for the Court, says: "The order of the Court is the blazed way for the officer to follow, and no other."

And in *Davis v. McDuffie;* 18 S. C., 495, a case also involving a judicial sale where the agent of a bidder claimed a verbal agreement with the Master not in accordance with the terms of the sale, and undertook to have such bidder's bid accepted, Mr. Justice McIver, writing the opinion of the Court, had this to say: "If, on the other hand, the agreement she is seeking to enforce is the verbal arrangement made by her agent with the master on the day of sale, then

she is not only asking the specific performance of an agreement for the sale of land which was not in writing, but, what is of more consequence, she is seeking to enforce an agreement which the master had no authority whatever to make, for nothing can be clearer than that the master has no power to add to or vary the terms fixed by the Court in the order of sale. *Seymour v. Preston,* Speers, Eq., 481; *Baily v. Baily,* 9 Rich. Eq., 392."

The Act April 11, 1932 (37 Stat. at Large, p. 1529, § 1), as amended by Act May 16, 1933 (38 Stat. at Large, p. 511, § 1), distinctly recognizes the necessity of a strict compliance with the terms of the decree under which property is sold, in defining who shall be deemed to be the successful bidder. We quote from said act: "The successful purchaser shall be deemed to be the person who submitted the last highest bid within said period and make the necessary deposit or guaranty."

The Circuit Judge recognized the above as the law, but, as aforestoted, ordered a resale under the authority of the *Ragland case* and *Poole v. Insurance Company.* In the *Ragland case,* the sale was being made by a receiver, and there was a misunderstanding to to where the bids would be received, and bids were being made at separate points, and there was no doubt about the inadequacy of the bids. The Circuit Judge ordered a resale, and this Court affirmed said order, agreeing with the conclusions reached therein, and then Mr. Chief Justice Blease, writing the opinion of the Court, stated: "We wish to add two observations. The first is that the sale made, or sought to be made, by the receivers, was subject to the confirmation of the Court, and, since it appears that the price offered by the highest bidder was entirely inadequate, the Circuit Judge may have well refused to have confirmed the bid, even if there had been no misunderstanding on the part of the respective bidders as to the place of filing the bids. The new sale, ordered by the Judge, confirms the fact that the bids made at the first sale were entirely too low, for at the second sale, ordered by Judge

Oxner, the property brought $25,000.00, about four times as much as the bids obtained at the first sale."

In the *Poole case,* due in part to the carelessness of a clerk in the Master's office, a bid of $4,000.00 by the attorney for the insuance company was not entered, as against Poole's bid of $500.00 regularly made, and a resale was ordered, which order on appeal was affirmed. Mr. Justice Bonham, who wrote the opinion of the Court, had this to say: "It is true that the rule is well settled that mere inadequacy of price is not sufficient ground for setting aside a judicial sale, but inadequacy of price, coupled with other incidents affecting the sale, may be sufficient ground. The rule is thus stated by Mr. Justice Hydrick in the case of *Bonham v. Cave,* 102 S. C., 308, 86 S. E., 681, 682: 'No doubt the rule is that inadequacy of price unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made. But all the cases recognize the principal that where a party in interest has been misled to his detriment by the officer making the sale, *through no fault of his own,* relief may be had.' " (Italics added.)

The pleadings of the case under consideration raised the sole question whose bid should be accepted by the Master. As hereinbefore indicated, we hold that the bid of appellant was the highest legal bid received, and that, upon compliance with said bid by paying the balance thereof, appellant is entitled to have deed executed to her and delivered upon payment of the cost of the deed and the necessary stamps.

Reversed.

Mr. Chief Justice Stabler and Messrs. Justices Carter and Fishburne concur.

Mr. Justice Bonham did not participate.