P. W. Jameson et al

*v.*

R. R. Kimbrough et al.

354 S. W. 2d 458.

(*Nashville,* December Term, 1961.)

Opinion filed February 8, 1962.

Rehearing Denied March 7, 1962.

520

JOHN S. PORTER, JOHN D. MARTIN, JR., Memphis, BURCH, PORTER & JOHNSON, Martin, TATE & MORROW, Memphis, of counsel, for appellants.

JOHN W. APPERSON, CHARLES M. CRUMP, Memphis, APPERSON, CRUMP & DUZANE, Memphis, of counsel, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

To the original bill and a cross-bill filed herein the appellees filed a demurrer which was sustained by the Chancellor and in the sustaining of which the bill and cross-bill were dismissed.

Jameson filed the original bill herein against Kimbrough, Crump, Trustee and individually, Glass and the two Lowrances and others in which he sought to have set aside and declared null and void a foreclosure sale of certain real estate in the City of Memphis, and for other related relief. An answer and cross-bill were filed by Glass and the Lowrances seeking similar relief against the defendants, Kimbrough and Crump. The demurrer, by agreement, of the defendants, Kimbrough and Crump, was treated as directed to both the original and cross-bill.

The cross-complainants, Glass and the Lowrences, had purchased from the defendant, Kimbrough, a parcel of land in the City of Memphis for $156,000.00 upon a complicated financing arrangment which included the securing of $66,000.00 of the purchase money by a first mortgage on the east portion of the tract (the tract involved in this lawsuit). The mortgagors (Glass and the Lowrances) had employed Jameson as a contractor to con-

struct a building on the western portion of the tract for purposes not necessary to herein mention, and as a result of his constructing these buildings they were unable to pay Jameson in excess of $30,000.00 that they owed him for this construction work, whereupon Jameson agreed to accept a second mortgage for the amount due him on the east portion of the land originally purchased, being the land involved in the present litigation.

The mortgagors (Glass and the Lowrences) defaulted on the $66,000.00 obligation when they owed approximately $35,000.00 of the principal. Upon this default being made, Kimbrough, the holder of this mortgage, requested the Trustee under the deed of trust to foreclose the trust deed. This foreclosure was advertised in accordance with the terms of the trust deed for a sale at the courthouse in Shelby County, Tennessee.

Meantime Jameson, the holder of the second mortgage, and the mortgagors (Glass and the Lowrences) made arrangements with another person in Memphis to bid this foreclosure sale up to $50,000.00 so as to fully cover the amount owed on the first mortgage and to pay to Jameson, the holder of the second mortgage, the amount which he had agreed to accept in satisfaction of his second mortgage. On the morning before this foreclosure was to take place the person who had agreed to bid $50,000.00 for the property for sale discovered that due to a Private Act applying to Shelby County a trustee's deed to him for the property could not be registered because the property did not face on any street. All of these parties attended the sale at the advertised time and these facts were made known to the Trustee and those present and it was requested by the second mortgagee that the sale be post-

poned pending a straightening out of the defect due to this Private Act. When arrangements could not be made the sale was then conducted as advertised.

The bill alleges that:

"At the sale which was then held, Kimbrough first bid $36,078.00 which was the amount of his principal indebtedness plus accumulated interest and foreclosure expenses. Jameson then entered a bid of $37,000.00 and there were no more bids. The Trustee struck off the property to the Complainant and then announced that he would prepare a deed by 2 p.m. of that day, at which time the consideration should be paid at the Trustee's law office, and if it was not paid, the property would be struck off to Kimbrough at his bid."

At 2 p.m. Jameson had not appeared to comply with his bid. Some 12 or 14 minutes after 2 p.m., he called the Trustee to see whether or not he should have the cash or a certified check, etc. The Trustee told him at that time that it was too late because he had already conveyed the property to Kimbrough according to his announced plans at the sale, that if Jameson had not appeared by 2 p.m. to comply with his bid he would then sell the property to Kimbrough. At 2:45 p.m., or thereabout, Jameson appeared with a certified check which was refused. The property was conveyed to Kimbrough at his bid of $36,078.00. There was between the time the bidding closed at the courthouse and 2 o'clock something like an hour and a half given to Jameson to comply with the bid that he had made at the foreclosure sale.

The bill does not allege that Crump was guilty of any fraud, nor does it allege that he acted illegally in any

manner except that he did not allow sufficient time for Jameson to comply with his bid and says that Crump in failing to do so was acting under the direction of the holder of the first mortgage and that by his acts he failed to act impartially in making a decision to a forced sale in clear and obvious concert with and under the instructions of his client, Kimbrough, in disregard of the interests of other parties to this litigation. It is likewise alleged, of course, that the property was worth far more than that bid by Kimbrough. The bill prays for damages in the amount of $15,000.00 which Jameson had agreed to accept for his second mortgage, and says in effect that the setting aside of the foreclosure sale would not satisfy Jameson, yet the bill alleges then in the alternative the foreclosure sale was void and should be set aside and the property readvertised for sale. Of course, the cross-complainants, the mortgagors, ask that it be set aside and that their rights be protected by the court in setting aside the sale and having a new sale, if necessary.

The demurrer of the appellees goes to the proposition that under the facts alleged, and particularly the paragraph as quoted from the bill hereinabove, the bill shows on its face that the Trustee has complied with the terms of the trust in conducting the sale as he did and knocking the property off to the next highest bidder when he announced at the time of the sale, when all parties were present, that if Jameson did not comply with his bid by 2 o'clock then the second bid of Kimbrough would be accepted.

It is argued very forcefully in the briefs, supplemental briefs, and it was argued at the bar of this Court that the selling of the property to Kimbrough after the

first bid was not complied with at 2 o'clock amounted to a private sale and that the only way that the Trustee could do this upon the failure to comply with the highest bid was to readvertise and resell the property.

Ordinarily, of course, the creditor, that is the holder of the mortgage note under a trust deed requests the Trustee to act after default in the mortgage. The original holder of the indebtedness, the one who takes the mortgage originally, normally appoints the Trustee and insofar as the Trustee is concerned it is his obligation when the holder of this indebtedness requests a foreclosure and informs him that there has been a default in the indebtedness, then to advertise and conduct a sale under the terms of the mortgage. There is no question in the lawsuit but that this was done. The Trustee is given a certain amount of discretion in the conduct of this sale and can only vary the terms of the sale which are conducted according to the instrument, that is, the trust deed that the parties have signed, when all parties consent thereto.

There is no contention here that this Trustee conducted this sale otherwise than in accordance with the instrument. The sale was had at the time notice had been given for the sale and in the established custom regarding a Trustee's sale under a trust deed.

It appears, too, that the holder of the first mortgage only bid the amount of his indebtedness with interest, and foreclosure expenses, and did not raise his bid beyond this amount after the holder of the second mortgage had made a bid of less than a thousand dollars more than this indebtedness. This fact shows that there was no conduct nor intention nor anything else on the

part of Kimbrough to obtain the property at a fraction of its value, but was merely bidding to protect his interest.

■ When the parties came to this sale and requested Crump to postpone the sale for some time to allow the defect due to the Private Act applying to Shelby County in reference to recording an instrument to be remedied, Crump as Trustee under the mortgage had no right to delay the sale until this technicality could be disposed of unless all parties agreed. The holder of the indebtedness under which Crump was selling this property did not consent. Therefore it was Crump's duty to proceed with the sale. It seems perfectly obvious to us that such a defect could have been disposed of before, if that was the real reason for it, and that this really offers no excuse for others who were interested in purchasing this property not to have sufficient funds within which to protect any bid that they made. The sale was conducted at 12 o'clock and after Jameson made the highest bid he was given until 2 o'clock to comply with his bid, and when he did not do so it was struck off as announced at the sale to the second highest bidder. This did not amount to a private sale but was a sale then and there when all parties were present to the second highest bidder provided the highest bidder did not comply with his bid within what seems to us to amount to a reasonable time under the circumstances.

This sale to Jameson as the highest bidder was not an absolute sale, but was a sale to him pending his compliance with the bid that he had made. He was given a reasonable time within which to comply with this bid. What the sale amounted to was a conditional sale, con-

ditioned upon his complying with the bid within a reasonable time, and it was announced there with all parties present and assenting thereto that if this was not complied with by that time the sale would be to the next highest bidder.

The Supreme Court of Nevada in *Dazet v. Landry*, 21 Nev. 291, 30 P. 1064, 1066, says:

" 'The highest bidder acquires no title to the thing purchased but by payment of the purchase money, and, if he fails to do this within a reasonable time, a resale may lawfully be made.' * * * The sheriff, as referee, is vested with discretionary powers in the sale of property in partition. If he had reason to believe that Landry was an irresponsible bidder, he could and should have refused to entertain any offer made by him; but, having conditionally accepted the bid, it was nothing but justice to all parties that Landry be granted the time he asked for to give him an opportunity to make his bid good; and, he not having returned within the 30 minutes, it was the duty of the sheriff to consider Landry an irresponsible bidder, and proceed as he did, and resell the premises without unnecessary delay and the additional expense of re-advertising."

We approve this language and to a large extent it is applicable herein.

In *Stone v. Stone*, 176 S.W.2d 464 (Mo.), that court held that if the Trustee elects not to hold the highest bidder to the performance of the terms of his bid, where the bidder refuses to pay the amount of his bid, but elects to sell the property, the Trustee has the alterna-

tive of declaring a sale to the next highest bidder, prompt-ly reselling, or readvertising the sale for another day. The Missouri court in this case cites two or three other Supreme Court of Missouri cases as authority for this holding.

■ As we see it, clearly when a Trustee announces at a legally advertised and conducted sale that if the highest bidder does not comply with the sale within a reasonable time, and a reasonable time depends, of course, upon the circumstances, that the second bidder will be declared the highest bidder then this amounts to a sale to the second bidder when the first bidder has not com-plied with his bid, and it is not a private sale. As long as the announcement was made, as it was, as shown by the quotation from the bill, it would not be necessary for the Trustee to again cry or readvertise the property and ask for bids when he has made this statement to all those present.

The Court of Chancery Appeals of this State in 1899 in the case of *Cockrill v. Whitworth,* reached a related conclusion though on much weaker facts than those as shown herein. This case was reported in 52 S.W. 524.

■ Under the facts alleged in this bill we certainly cannot say as a matter of law that the time allowed the high bidder, Jameson, to comply with his bid was unrea-sonable. As said above, they had known for some days that this sale was to be conducted; they at least were presumed to know the law as to this Private Act apply-ing to Shelby County as all parties were represented by counsel and had ample opportunity to straighten out this matter of the recordation of the Trustee's deed; and they likewise knew if they were going to bid for

the property they should be in a position to pay for it when they bid on it. Thus it is that we think there was ample opportunity for them to have complied and that the time given to comply was reasonable under the circumstances.

There has been no showing of fraud or undue advantage taken of anyone that can be corrected or set aside by the Court. We are unable to see how the defendant, Kimbrough, was in any way to blame for the misfortunes of Jameson or the mortgagors. Kimbrough may have derived a benefit from their not complying with their legal obligations, but insofar as we can see Kimbrough has obtained no undue advantage and has had no advantage other than such as lawfully comes to him under the circumstances. In the Cockrill case, supra, the Court made this very apt observation:

"The man who is in debt, with his property incumbered, and unable to meet his obligations, in the nature of things is compelled to undergo sacrifices and meet losses for which there is no legal redress in such times, and a man of means is enabled to obtain benefits by good bargains, when others are forced to sell. The complainant's loss or misfortune resulted from his being in debt, having his property mortgaged, and unable to meet his obligations, resulting in the foreclosure sale. The defendant's advantage resulted from his having means to buy property so forced on the market. While we believe that Christian ethics underlie, and in a large measure constitute the living principles of, the common law, still, as a matter of practical application, the courts have never yet been able

to compel parties to come up to the full measure of the golden rule.''

For the reasons expressed herein, the decree of the Chancellor must be affirmed.

## Opinion On Petition To Rehear

The appellants have filed herein a very forceful, courteous and dignified petition to rehear, wherein they question in particular our conclusion as set forth in the original opinion that under the facts as stated in the bill this sale became valid.

Many cases, as well as texts, are cited to support the proposition that where the highest bidder does not comply with the terms of the sale, or it appears that his bid, after being apparently accepted, will not be carried into effect, or must be rejected for some reason or other, the property cannot be awarded to the second highest bidder, but a new sale must take place. What has just been said is almost a quote from 2 Freeman on Executions, sec. 300. All the authorities, as far as we can find, or as set forth in this very able brief, do not sustain this statement insofar as it applies to the facts of the instant case. The authorities cited as a basis for the Freeman statement are sales by sheriffs under execution wherein the law requires of him certain duties in this regard which he must follow—he has no discretion in things of this kind.

We have very carefully read all the authorities cited in this brief in support of this petition to rehear, but none of them is based on the factual situation herein as discussed in our original opinion.

The nearest case in support of the contention of the appellants, which is cite in their brief, is *Kunkel v. Eby*, 21 Pa.Co.Ct. R. 517 (1899). We have read this case some two or three times and are convinced that it is not binding on us. In this Kunkel case there was a sheriff's sale of certain property which was struck off to Eby with Kunkel being the next highest bidder. After the sale Eby signed the conditions of the sale, one being that if he didn't comply or defaulted in his bid, "the deed will be made and tendered to the next highest bidder complying with the terms * * *." This Pennsylvania Court then goes on to hold that such a condition is void and that upon the failure of Eby to comply with his bid the property must be resold. This case cites Freeman on Executions, which was a different edition from that above referred to, as well as other authorities, and sets forth the general rule as above stated as taken from Freeman on Executions. The case then cites as the principal authority for its holding and quotes from *Swortzell v. Martin*, 16 Iowa 519. We have read and re-read the Swortzell case, and, after doing so, are firmly convinced that it has nothing to do with the present case. This Swortzell case does make one very true and apt remark, to wit, "Good faith and good judgment are all that the law requires, and these may not be dispensed with." Under the facts of the instant case this above quotation was clearly carried out.

In the Swortzell case the court says that the question is, "had the sheriff the right, after receiving Cordray's bid, and acting upon it, and declaring him to be the purchaser, subsequently, after a lapse of one or more days, without any re-advertisement or resale, to fall back on the bid of Hastings?"

The very statement by the court of the question in the Swortzell case clearly distinguishes that case without more from the instant case. Then, too, it is clear from reading the Swortzell case that it was based primarily on a statute of Iowa that required "when the purchaser fails to pay the money when demanded (and this demand may, of course, be made at the sale). the plaintiff or his attorney may elect to proceed against him for the amount, otherwise the sheriff shall treat the sale as a nullity and may proceed to sell again on the same day or after postponement, as above authorized." The language in the Swortzell case, "shall treat the sale as a nullity and may proceed to sell again", is underscored or italicized in that case. Obviously, from what has just been said this distinguishes the Swortzell case entirely from the factual situation as set forth in our original opinion in this case.

Throughout this Swortzell opinion the court frequently makes the remark that under the statute this sale to Hastings in that case could not be good. Clearly, as shown in our original opinion, the factual situation is entirely different. In our case at the very sale where all parties were present it was announced that if the bid of the highest bidder was not complied with in a reasonable time the second bid would be accepted as the highest bid. Obviously, since these records show that the sale had been properly advertised, everybody was present, no fraud was shown or anything of the kind, this was a reasonable, just and right procedure. It may be noted, too, that the Chief Justice of Iowa dissented in the Swortzell case.

The Supreme Court of North Carolina in *Cummings v. MacGill*, 6 N.C. 357, held that if one at a sheriff's sale bids for the property, and fails to pay his bid, it thereby becomes void, and the sheriff may either expose the property again for public sale or validate and confirm the next highest bid by receiving the money and making title to the bidder. Our case is a much stronger case than the North Carolina case because at the sale of this property, as said time and time again, when all parties were present, it was announced that if this highest bid was not complied with by a certain time the next highest bid would be accepted. Under such circumstances how does anyone have a right to complain?

After giving the matter again considerable thought and study, we are more than satisfied with our original conclusion, and for the reasons stated the petition to rehear must be denied.