RAWLS, Judge.
The intervenor in a mortgage foreclosure suit has appealed from an amended final decree entered by the Circuit Court for Volusia County.
The principal question presented for our determination in this appeal is whether the chancellor erred in the said decree in setting aside the sale of' the mortgaged property to the intervenor at the foreclosure sale under the circumstances set forth below.
The propriety of foreclosing the said mortgage is not before us for adjudication. The original final decree ordering such foreclosure was appealed to the Supreme Court of Florida, which dismissed the appeal. After remand and the foreclosure sale, the chancellor entered the amended final decree appealed from herein.
Briefly stated, the basic facts shown in the record and pertinent in the present consideration are the following:
The appellee, Julius Carpene, filed a complaint in the Circuit Court against the ap- *360 pellee John Vafides seeking to foreclose a mortgage executed by the latter. Later the appellant, P. L. Watson, Trustee, filed a motion to intervene and his answer as in-tervener, asserting therein that he was an owner and holder of two judgments against Vafides. The court granted the motion to intervene.
On August 30, 1965, the court entered its original final decree, holding that the mortgage sued upon was in default and that Carpene was entitled to recover the amount of $29,911.28 as principal and interest, costs, and attorney’s fees. The decree further provides that unless Vafides should, within three days after the entry of the decree, pay to Carpene the said sums, the clerk of the court shall sell the mortgaged property at public sale on September 15, 1965, in the manner prescribed by Section 702.02, Florida Statutes, F.S.A., upon the terms and conditions provided in the decree.
Vafides did not pay the sums stated in the decree, so at the time and place as advertised; that is, at 11:05 a. m. on September 15, 1965, the clerk of the court held a public sale of the subject mortgaged property. The parties and several others evidencing an interest in the property were present. A number of bids were received, but the highest and best bid was that of defendant Vafides in the sum of $50,000.00. The clerk then invited Vafides to come into his office and conclude the transaction. When Vafides informed the clerk that he did not presently have the funds available but that a relative in Europe had wired the money to a New York bank, he was advised that he. would be required to produce the amount of his bid within the legal hours of the sale. The advertised hours for sale were between 11:00 a. m. and 2:00 p. m., and Vafides was given until 1:45 p. m. to complete his purchase or the property would again be offered for sale.
When Vafides failed to produce the money, the clerk again offered for sale the mortgaged premises which were knocked off to Watson on his bid of $30,-000.00.
Prior to confirmation Vafides filed his objections stating several grounds, one being that the sale was invalid and that the highest and best bid was that of Watson made at the first sale in the sum of $41,-000.00.
The chancellor entered the amended final decree appealed from herein. This decree set aside the sale and ordered a resale upon the finding:
“ * * * the sale held by the Clerk of the Circuit Court on September 15, 1965, was not properly conducted in that when the Defendant, John Vafides, did not deposit with the Clerk the amount of the successful bid within a reasonable time, that the Clerk should have resumed the bidding at the amount of the bid of the previous bidder prior to the successful bid of the Defendant, John Vafides.”
The authority of the chancellor to refuse to confirm and to order a resale is set forth in Southern Realty & Utilities Corporation v. Belmont Manufacturing Corporation,[1] to wit:
“It should be noted that this was not a case of the chancellor’s being asked to set aside a sale which he has already confirmed, which carries with it a presumption of regularity, but of his refusing to confirm and ordering a new sale. It is both the right and duty of the chancellor to supervise the process in his court and to protect all the parties thereto from unfairness as well as fraud in its execution. Macfarlane v. Macfarlane [50 Fla. 570, 39 So. 995], Since the foreclosure sale is not complete until it is confirmed, and carries no presumption of regularity, it should not take as strong a showing to justify a chancellor’s exercise of his discretion to refuse confirmation as it does to set aside a confirmed sale. His dis *361 cretion is broader in the one case than in the other.”
At common law, a mortgage was regarded as passing the legal title to the estate pledged to the mortgagee, and if the debtor failed to pay or perform at the stipulated time, he ceased to have any interest in the estate. At an early date equity recognized the right of the mortgagor, even after default, to maintain a bill in equity to redeem; this right was oftentimes referred to as “Equity of Redemption.” The mortgagor’s equity of redemption has also been defined as his residium of interest in the mortgaged property, and as such is measured by the balance remaining after the debt is discharged from the mortgaged property.[2]
Florida has long recognized that the mortgagee has only a lien, and foreclosure is only or the purpose of enforcing it.[3] The strict common law type foreclosure has never been permitted in this state, but the equitable remedy of the mortgagee is a sale of the property to pay his debt.[4] Although the general statement most often quoted is, “The essential purpose of such a suit [foreclosure of a mortgage] is to have the mortgaged property applied to the debt secured, together with such other relief as may be necessary to the enforcement of the debt.” [5], as gleaned from the above cited authorities, the historical reason for equitable courts to have asserted jurisdiction in controversies between mortgagors and mortgagees has been for the primary purpose of holding an umbrella over the head of a mortgagor, protecting him from the harsh rain of forfeiture, and allowing him the right of redemption under equitable principles. It is this equitable concern for the mortgagor that we think motivated the chancellor in decreeing that another public sale be had of the mortgaged premises.
In the light of the foregoing, an examination of the facts considered by the chancellor in exercising his discretion that the mortgaged premises be put up for bidding at another public sale is necessary. The amount of the principal, interest, costs and attorney’s fees found due on the mortgage debt was $29,911.28. At the first public sale, where there were a number of people interested in the property Watson made what must be assumed to have been a bona fide bid of $41,000.00. Within three hours this bidder apparently decided that the property had depreciated in value in the sum of $11,000.00, for he is now contending that the chancellor was in error in not conclusively accepting his bid of $30,000.00 made at the second sale. The chancellor under these circumstances apparently concluded that Watson was taking advantage of the mortgagor’s default in performance, and in so doing tried to purchase the property at an unconscionable low price.
The general law as to resales is clearly set out in C. J. S.,[6] viz:
“Where the successful bidder fails or is unable to comply with his bid, the property may be put up for sale a second time. The necessity of advertising a second time or giving new notices may be avoided if the resale is made on the spot, or the time for resale is proclaimed, before the bidders disperse; otherwise there must be a new publication and evidence of the trustee’s or mortgagee’s continuing authority to make the sale.”
This record does not reflect the making of any announcement of a continuation of the sale prior to dispersal of the bidders. In fact the record does not disclose any public announcement at any time. It was only after the apparent successful bidder went into the Clerk’s office to complete the transaction did the Clerk make any *362 decision as to the possibility of a resale. The object of a notice of public sale is to inform the public of the nature and condition of the property to be sold, and of the time, place, and terms of the sale.[7] Once the Clerk conducted the sale without any announcement of a resale, the public was entitled to rely upon the fact that the sale had been completed, and a subsequent purported resale could only be had in accordance with the directions of the court.
A case clearly in point is Gray v. Sullivan,[8] wherein it is stated:
“McPherson failed to make good his bid, and later, on the same day, but after all bidders who appeared at the first sale had dispersed, the trustee again offered the property for sale, and it was purchased by one Lowenberg. The court held that when the purchaser at a trustee’s sale fails to make good his bid, the property cannot be offered for resale without a new advertisement therefor, unless the resale is made immediately and before the bidders at the first sale have dispersed. This seems to be in accord with the current of authority. 41 C.J. 986; 23 C.J. 653; 19 R.C.L. 438. That the resale was made within the hours specified for the sale in the advertisement therefor is of no consequence. Judge v. Booge, 47 Mo. 544; Barnard v. Duncan, 38 Mo. 170, 90 Am.Dec. 416.”
Had the Clerk made a resale immediately before the bidders dispersed, without question he should have started at the second highest bid.[9]
A judicial sale, at the best, does not generally afford the most advantageous forum for the sale of property, and if the chancellor is of the opinion that the sensitive concern of equity will be best satisfied by not confirming a specific foreclosure sale, then the record should clearly show that the chancellor has abused his discretion before an appellate court will hold him to be in error.
Affirmed.
CARROLL, DONALD K., Acting C. J., and JOHNSON, J., concur.

. Southern Realty & Util. Corp. v. Belmont Mfg. Corp., 186 So.2d 24, 25 (Fla.1966).

. See 59 C.J.S. Mortgages §§ 1 and 813.

. Connor v. Connor, 59 Fla. 467, 52 So. 727 (Fla. 1910) ; Georgia Casualty Company v. O’Donnell, 109 Fla. 290, 147 So. 267 (1933).

. Browne v. Browne, 17 Fla. 607, 35 Am. Rep. 96.

. 22 Fla.Jur., Mortgages § 294, page 383.

. 59 C.J.S. Mortgages § 580b.

. 22 Fla.Jur., Mortgages § 350, page 452.

. Gray v. Sullivan, 162 Miss. 610, 139 So. 855, 856 (1932).

.It is a generally accepted practice at all public auctions that if the highest [or lowest] bidder cannot perform, the bidding is resumed at the price bid by the second highest [or lowest] bidder.