22154

Lamont F. HAMRICK and Trava D. Hamrick, Appellants, v. J. Calvin SUM-MEY, Trustee, J. David Acker, Furman Ray Gray, H. D. Goforth, d/b/a Go-forth Auction and Realty Co., and Barry L. Hamrick, Respondents.

(320 S. E. (2d) 703)

Supreme Court

*Richard H. Rhodes,* Spartanburg, *for appellants.*

*William R. James* and *George F. Townes,* Greenville, *Paul R. Hibbard,* Spartanburg, and *Wesley L. Brown,* Gaffney, *for respondents.*

Aug. 9, 1984.

LITTLEJOHN, Chief Justice:

The Plaintiffs-Appellants, Lamont F. Hamrick and Trava D. Hamrick, brought this action to set aside an auction sale of land. The Defendants-Respondents are J. Calvin Summey, J. David Acker and Furman Ray Gray, Trustees who hold title to the property, H. D. Goforth, an auctioneer and realtor, and Barry L. Hamrick, successful bidder at the auction. The trial judge granted a motion for summary judgment made by the Respondents, thereby validating the sale. Plaintiffs, Hamrick and Hamrick, have appealed. We affirm.

The facts out of which the controversy arises are as follows: The Appellants were indebted to the Trustees. In order to

extinguish the debt, Appellants deeded two parcels of land to them. It was a part of the agreement that the Trustees sell as much of the land as was necessary to extinguish the debt. The surplusage was to go to the Appellants. To accomplish this, the Trustees employed Respondent, Goforth, to conduct a public auction.

Under the rules of the auction, a successful bidder was required to deposit twenty percent of the amount bid on the day of sale by cash or check approved by the seller. The balance of the purchase price was to be paid at the time of closing the transaction. If the successful bidder paid the deposit by check, Goforth or the Trustees had to approve the check. If the successful bidder was satisfactory to the auctioneer, nothing more was required. The sale was conducted first by lots and finally as a whole.

R. C. Collins, who successfully bid on some lots, was unknown to those in charge of the sale. After he had successfully bid on several lots involving bids of $40,000, the Trustees conferred with their attorney. Inasmuch as they did not know Collins nor of his financial status and inasmuch as they had seen him conferring with Appellants at the auction, they decided that his checks would no longer be accepted as a deposit unless he signed an agreement to bring either a certified check or a certificate of deposit or $200,000 to the office of the attorney for the Trustees two days later. Collins refused to sign the agreement and did not bid any other parcels or on the entire tract.

After the sale was concluded by separate parcels, the land was sold as a whole to Respondent, Barry L. Hamrick, (no relation of Appellants) for $216,576.15. Neither Barry Hamrick nor others were aware of the additional requirements placed on Collins.

In this action, Appellants contend that the bidding was chilled by requiring Collins to sign the agreement. It is their position that, except for the treatment of Collins, the land would have brought more money which would have been to their advantage.

Both parties moved for summary judgment. It is from the order of the judge granting Respondent's motion that this appeal arises.

The Appellants submit that the trial judge erred (1) in

failing to require the subject property to be re-sold at auction because the action of Respondents chilled the bidding; and (2) in holding that a good faith purchaser was entitled to validate the sale even if improperly conducted.

Because we agree with the holding of the trial judge on the first issue, it is not necessary to discuss the second question. His order treating the first issue, which we adopt as the directive of this Court, is as follows:

"In argument before me, the defendants assert that Mr. Collins was unknown to them or Go-forth Auction and Realty Co. personnel. Collins, by failing to bring with him sufficient cash to make advertised necessary deposit or any indication that his personal check was valid, in the opinion of the sellers, barred him from participating as a serious bidder in accordance with the terms of the auction. Defendants further contend that all evidence suggest the sale was conducted in a proper manner, and that the property brought its high dollar.

"The plaintiffs on the other hand contend that by refusing to accept a personal check from Mr. Collins or by requiring him to enter into an agreement designed to give security to his bidding, the creditors 'chilled' the sale and stifled the other bidders so as to cause the property to bring less than it would have brought had there been competition among the bidders. Although plaintiffs do not deny that Collins lacked the necessary cash or did not have an 'approved-check', they contend that the creditors acted unreasonably in refusing to accept his personal check and that Collins was in effect singled out and placed under more stringent terms and conditions than the other prospective bidders.

"It is axiomatic that public policy requires open, free competitive bidding at auctions so that the owners may receive a fair price through competitive bidding. Conduct which has the effect of stifling fair competition and chilling the bidding is against public policy and will cause the sale to be set aside. *Farr v. Sims*, 9 S. C. Eq. (Rich. Cas.) 122 (1832); *Hamilton v. Hamilton*, 19 S. C. Eq. (2 Rich. Eq.) 355 (1845); 7 Am. Jur. (2d) *Auctions and Auctioneers* § 24.

"On the other hand, announcement by the auctioneer of the terms and conditions upon which bidders or offers will be received are generally deemed to supersede all others and to bind the purchaser even though he did not hear

or understand the announcement. 7 Am. Jr. (2d) *Auctions and Auctioneers* § 14. Ordinarily the auctioneer has the right to prescribe the rules of bidding and any bid not in conformity with the terms and conditions of sale as advertised and announced by the auctioneers is not entitled to consideration. 7 Am. Jr. (2d) *Auctions and Auctioneers* § 21. It is clearly the seller's right in connection with the sale of property at a public auction to prescribe, within reasonable limits, the manner, conditions and terms of sale. 7 Am. Jr. (2d) *Auctions and Auctioneers*, § 14.

"Likewise, a deposit of cash or other security by prospective bidders to ensure compliance with the contract of sale on the part of one whose bid is accepted, is usual and customary. The person conducting the sale may in a proper case require a bidder to deposit or furnish a reasonable security as a condition of the acceptance and reporting of his bid. 47 Am. Jr. (2d) *Judicial Sales* § 139.

"In *Peoples National Bank of Greenville v. Hudson,* 179 S. C. 399, 184 S. E. 102 (1935) [1936], where there was a Decree ordering the sale of property which provided that there should be a deposit in cash or by certified check by the successful bidder, and this information was also advertised, a bidder who did not comply with these terms and conditions could not complain. Although the *Peoples* case dealt with a judicial sale, the Court noted the reason why the custom of requiring either cash deposit or something stronger than a personal check along with a bid has developed.

> 'The custom of requiring bidders at judicial public sales to make a deposit of a small percentage of the bid to be forfeited as a penalty in case of noncompliance with the bid no doubt came about through the failure of the bidder to comply, and thus, when the bidder could not be forced to comply with the bid by reason of financial irresponsibility, loss of time was incurred, and expense of readvertising entailed. And the custom requiring that the deposit be made with actual money or certified check no doubt had its birth from individual's checks being returned and not paid by reason of "Insufficient Funds." To allow a person who is not financially responsible to give a worthless check as a deposit places such person in the advantageous position of complying with his bid at his

pleasure. If such person can resell the property bid in at a profit, or finds that he has made a profitable purchase, then he makes his check good and complies with his bid; otherwise he does nothing and there is no redress.'

"It is, therefore, clear that Collins simply never brought himself within the terms of the auction offering in that he failed to make a 20% deposit on his bids and was not prepared to do so, and he also was then unable to give the sellers any reason why they should approve his personal check. He was given full opportunity by the sellers to give some security for his check so that he could be 'approved' by the sellers, but Mr. Collins simply failed to do so. There was no discrimination against Mr. Collins in seeking to have him pledge certificates of deposit on the Monday following the sale, but this was merely an effort to give some strength and credibility to his bid. All of the bidders who had given personal checks were known either to the sellers or to Mr. Goforth or his staff. No one at the sale other than plaintiffs knew or had seen Mr. Collins before the sale, and certainly had no reason to believe that he could produce the necessary cash to buy the property. To have accepted Mr. Collins' check without some additional security would have jeopardized the entire sale and could well have required the whole property to be reauctioned at some subsequent sale if Collins failed to comply. The Court cannot help but be of the opinion that had Mr. Collins attempted to buy anything else in Cherokee County, such as a tank of gasoline on Interstate Highway 85, he would have run into the same difficulty with his personal check that he did at this auction as the public is becoming increasingly aware of the potential problems attendant upon accepting a personal check."

The judge correctly ruled that the Respondents were entitled to a summary judgment.

Affirmed.

NESS, GREGORY and HARWELL, JJ., and ALEXANDER M. SANDERS, JR., Acting Associate Justice, concur.