146 DUNDAS CORPORATION & another[1] *vs.* CHEMICAL BANK
& others.[2]

Middlesex.   May 5, 1987. — August 10, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Mortgage,* Foreclosure, Real estate. *Sale,* Real estate.

Where at a mortgage foreclosure sale of certain real property by public
   auction pursuant to the mortgagee's statutory power of sale, the auc-
   tioneer orally announced, in the presence of all bidders, that if the highest
   bidder defaulted the second highest bidder would be permitted to purchase
   the property, a sale to the second highest bidder after the highest bidder
   defaulted was not invalidated by the circumstance that this term had not
   been included in the published notice of sale; consequently, transfers of
   the property by the mortgagee to the second highest bidder and, later,
   from that bidder to subsequent owners were valid in so far as the question
   of invalidity was based on the oral announcement of the term at issue.
   [592-595]

CIVIL ACTION commenced in the Superior Court Department
on March 6, 1986.

The case was heard by *Hiller B. Zobel,* J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Robert M. Bonin (Judith E. Beals* with him) for the plaintiffs.
*Gerald S. Garnick* for Chemical Bank.
*Richard L. Alfred (Robert D. Richman* with him) for Edward
C. Maher & others.

ABRAMS, J. This case raises the question whether a mortgage
foreclosure sale of three parcels of property to the second

---

[1] Timothy J. Sheehan, III.

[2] Jay Z. Aframe and Francis G. McGee, as they are trustees of the Great
Bridge Realty Trust, and Edward C. Maher.

highest bidder is valid if the term permitting the second highest bidder to purchase the property, if the highest bidder defaulted, is announced orally at the sale but was not included in the published notice of the sale. The plaintiffs are 146 Dundas Corporation (Dundas), the mortgagor of the property, and Timothy J. Sheehan, III,[3] the defaulting bidder at the foreclosure sale. The defendants are Chemical Bank, the mortgagee of the property; Edward C. Maher, the second highest bidder and ultimate purchaser of the property from Chemical Bank; and Jay Z. Aframe and Francis G. McGee, the present owners of the property. After the sale of the property to the second highest bidder, the plaintiffs sought a judgment declaring the sale to Maher to be invalid. See G. L. c. 231A (1984 ed.). The plaintiffs further sought a declaration that the sale from Maher to Aframe and McGee is invalid and that Sheehan, III, the highest bidder, has the right to purchase the property. Finally, in the alternative, they asked that the court set terms and conditions for Dundas's right to redeem the property. On cross motions for summary judgment, a judge in the Superior Court granted the defendants' motion for summary judgment and denied the plaintiffs' motion. The judge determined "that the sale to defendant Maher was, on the undisputed facts, valid as a matter of law."[4] The plaintiffs appeal. We transferred the case to this court on our own motion. We affirm.

We summarize the facts.[5] Dundas owned three parcels of land in Barnstable. On June 30, 1978, Dundas, as security for

---

[3] Sheehan, III, is the son of Sheehan, Jr., who is the principal of Dundas.

[4] Although the judge's determination can be viewed as a declaration of rights, we remind litigants and judges that, under G. L. c. 231A, the judge should declare the rights of the parties, even on motions for summary judgment. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 845 (1977); *Attorney Gen.* v. *Kenco Optics, Inc.,* 369 Mass. 412, 418 (1976).

[5] The record contains the pleadings, interrogatories and answers, requests for admissions and answers, and affidavits of Mr. Gerald S. Garnick, counsel for Chemical Bank during the foreclosure proceedings, Timothy J. Sheehan, Jr., and Orrin P. Rosenberg. To the extent that the affidavits of Garnick and Rosenberg contain opinion statements, we disregard those portions of the affidavits. The issue of law for the court to determine is the validity of the sale.

a loan, mortgaged the property to Chemical Bank. Timothy J. Sheehan, Jr., Dundas's principal owner, signed the mortgage. The mortgage contained the statutory power of sale. See G. L. c. 183, § 21.[6]

Dundas defaulted on its loan, and on or about July 21, 1982, Chemical Bank commenced foreclosure proceedings. On September 21, 1982, a judge in the Superior Court entered an order authorizing Chemical Bank to foreclose on the mortgage. A foreclosure sale was scheduled and advertised to take place on November 6, 1982.

On November 5, 1982, Dundas filed a petition under Chapter 11 of the Bankruptcy Code in the United States District Court for the District of New Jersey. Because the filing of a bankruptcy petition automatically stays any actions to obtain possession of a debtor's property, see 11 U.S.C. § 362(a)(2) (Supp. III 1985), Chemical Bank moved in the Bankruptcy Court for relief from the automatic stay. At a hearing on the motion, Chemical Bank and Sheehan, Jr., agreed that Dundas would resume making payments to Chemical Bank. On October 26, 1983, the judge entered a consent judgment.[7]

---

[6] General Laws c. 183, § 21, provides: "The following 'power' shall be known as the 'Statutory Power of Sale,' and may be incorporated in any mortgage by reference:

(POWER.)

"But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity."

[7] On June 23, 1983, while this corporate bankruptcy proceeding was pending, Sheehan, Jr., filed an individual bankruptcy proceeding which was dismissed by a consent order in January, 1984.

Dundas defaulted on its obligations under the consent judgment. On May 22, 1984, the Bankruptcy Court judge ordered that the stay be lifted and that Chemical Bank be permitted to foreclose its mortgage and complete the foreclosure sale. Following the procedure set forth in G. L. c. 244, § 14,[8] Chemical Bank published notice of the time and the place of the sale. The published notice contained a description of the property. The published notice also included terms for the completion of the sale.[9]

The sale took place on June 9, 1984, on the property. Approximately twenty-nine bidders were present. At the time of the sale, the auctioneer announced that, if the highest bidder failed to complete the sale, the property would be sold to the second highest bidder. The highest bidder was Sheehan, III, with a bid of $425,000. The second highest bidder was the defendant Maher with a bid of $420,000. The auctioneer en-

---

[8] General Laws c. 244, § 14 (1984 ed.), provides in part: "The mortgagee . . . may, upon breach of condition and without action, do all the acts authorized or required by the power; but no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice thereof has been published once in each of three successive weeks, the first publication to be not less than twenty-one days before the day of sale, in a newspaper, if any, published in the town where the land lies or in a newspaper with general circulation in the town where the land lies and notice thereof has been sent by registered mail to the owner or owners of record of the equity of redemption as of thirty days prior to the date of sale . . . ."

[9] The notice contained the following terms: "Twenty Thousand Dollars ($20,000.00) are to be paid in cash, certified check, or bank draft at the time of the sale, and the balance is to be paid within fifteen (15) days following the order of the Superior Court approving the entry and sale at the Barnstable Registry of Deeds, Barnstable, Barnstable County, Massachusetts.

"The Mortgagee reserves the right to sell the three (3) lots at the foreclosure sale, either individually or all together as one sale; and bids will be taken for both methods of sale for the mortgaged premises. If the lots are sold on an individual basis, as three (3) separate lots, then, in that event, the terms of the sale are as follows:

"Nine thousand Dollars ($9,000.00) are to be paid in cash, certified check, or bank draft at the time of the sale of each lot; and the balance is to be paid within fifteen (15) days following the order of the Superior Court approving the entry and sale at the Barnstable Registry of Deeds, Barnstable, Barnstable County, Massachusetts."

tered into memoranda of sale with both Sheehan, III, and Maher. The memoranda were the same, except that Maher's memorandum contained the additional statement that his "right [as second highest bidder] to purchase the property under the Memorandum of Sale shall only take effect upon the default of the highest bidder to purchase the said property." Both Sheehan, III, and Maher made the required deposit.

The Superior Court approved the foreclosure sale, and the closing was scheduled to take place on July 20, 1984. On February 14, 1986,[10] the Superior Court approved the sale of the property to Maher, and the sale was completed on that day. Also on that date, Maher conveyed the property to Jay Z. Aframe and Francis G. McGee as trustees of the Great Bridge Realty Trust.

On March 6, 1986, the plaintiffs brought this action. On August 8, 1986, the defendants filed a motion for summary judgment. See Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). The plaintiffs also moved for summary judgment. On September 11, 1986, the judge allowed the defendants' motion for summary judgment and denied the plaintiffs' motion.

On appeal, the question is whether the oral announcement of the term that, should the highest bidder fail to complete the sale the property would be sold to the second highest bidder, invalidates the sale to Maher and the subsequent sale to the trustees. The question encompasses a determination whether an oral announcement at an auction of the term at issue is permissible and whether the term itself is valid.

---

[10] The almost two-year time delay resulted from Chemical Bank's extensive efforts to allow Sheehan, III, to complete the purchase. Sheehan, III, delayed completion of the sale three times. On July 19, 1984, the day before the first scheduled closing, Sheehan, III, filed a voluntary petition under Chapter 11. On February 22, 1985, the day that Chemical Bank had set as the final deadline for Sheehan, III, to purchase the property, Sheehan, III, again filed for bankruptcy. On October 7, 1985, the day before a hearing was held in Superior Court on a motion for approval of the sale of the property to Maher, Sheehan, III, filed a third petition for bankruptcy. According to the record, on January 29, 1986, the Bankruptcy Court judge entered an order prohibiting Sheehan, Jr., who represented his son in each of the bankruptcy cases, from filing another bankruptcy petition for 180 days.

The statutes governing a mortgage foreclosure under the power of sale, see G. L. c. 183, § 21, and G. L. c. 244, § 14, see notes 5 and 7, *supra,* do not prescribe the specific method by which a foreclosure sale should proceed. General Laws c. 183, § 21, requires that the sale be by public auction, but the statute does not provide the terms by which the auction should be conducted. General Laws c. 244, § 14, requires that the mortgagee publish notice of the sale, but the statute does not provide the required form of notice.[11]

At common law, "the basic rule of law applicable to the foreclosure of real estate mortgages is that 'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" *Seppala & Aho Constr. Co.* v. *Petersen,* 373 Mass. 316, 320 (1977), quoting *West Roxbury Co-op. Bank* v. *Bowser,* 324 Mass. 489, 492 (1949). "The power of sale in the mortgage is very broad. It authorizes the mortgagee . . . to sell the granted premises at public auction on or near the premises. . . . [B]y reasonable implication it authorizes the mortgagee to adopt such terms of sale as are usual and necessary to execute it with effect. The power to do an act includes the power to do all such subordinate acts as are usually incident to or are necessary to effectuate the principal act in the best manner." *Pope* v. *Burrage,* 115 Mass. 282, 285 (1874).

The foreclosure sale in this case met the statutory requirements. The sale was a public auction. Chemical Bank published notice of the sale. There is no claim that the description of the land in the published notice is inaccurate. Further, there is no claim that the published terms of the sale, note 9, *supra,* were not followed.

---

[11] The Legislature included a suggested form of foreclosure notice in G. L. c. 244, § 14. In that suggested form, the land is described as in the mortgage and the terms of the sale are listed. The suggested terms include "the amount, if any, to be paid in cash by the purchaser at the time and place of the sale, and the time or times for payment of the balance or the whole as the case may be." The form also includes the statement "[o]ther terms to be announced at the sale." The statute states that "nothing herein shall be construed to prevent the use of other forms."

The general rule is that, "[s]ince no contract can be created until bidding begins, it necessarily follows that even though an auction sale has been advertised . . . to be held under . . . specific conditions, the auctioneer may without liability change those conditions by oral announcement at the commencement of the sale." 1 S. Williston, Contracts § 29, at 78 (3d ed. 1957). See Restatement (Second) of Contracts § 28 (2) (1979). "[F]ormal written terms [in the notice of sale] may be modified or added to by the auctioneer at the beginning of the sale." *Kennell* v. *Boyer*, 144 Iowa 303, 306 (1909). See *Coleman* v. *Duncan*, 540 S.W.2d 935, 938 (Mo. Ct. App. 1976); *Hamrick* v. *Summey*, 282 S.C. 424, 427-428 (1984); *Keske* v. *Boeder*, 168 Wis. 369, 371 (1919). This general rule applies to auctions of real property. *Well* v. *Schoeneweis*, 101 Ill. App. 3d 254, 257 (1981). *Moore* v. *Berry*, 40 Tenn. App. 1, 8 (1955). *Holston* v. *Pennington*, 225 Va. 551, 556 (1983). A term requiring a deposit, although not published in the notice but instead announced orally at the sale, is valid. See *Model Lodging House Ass'n* v. *Boston*, 114 Mass. 133 (1873). If the term permitting the second highest bidder to purchase the property on default of the highest bidder is valid, we see no reason to invalidate the sale because the term was announced orally.

Chemical Bank's published notice was proper in its description of the property and the terms of the sale set forth. In response to the published notice, approximately thirty-six prospective bidders came to the sale. In the presence of all of the bidders and prior to the commencement of the bidding, the auctioneer announced that the property would be sold to the second highest bidder, if the highest bidder defaulted. Thus, even before the bidding began, the bidders were on notice of the additional term and of the fact that the sale to the highest bidder was conditional on the highest bidder's completing the purchase.

States which have considered the problem generally conclude that, in mortgage foreclosure sales, if the highest bidder fails to pay, the trustee of the property may declare that the next highest bidder may purchase the property, may resell the property promptly, or may readvertise the sale for another day.

See *Watson* v. *Vafides,* 212 So. 2d 358, 361-362 (Fla. Dist. Ct. App. 1968); *Stone* v. *Stone,* 176 S.W.2d 464, 467 (Mo. 1944); *Davis* v. *Hess,* 103 Mo. 31, 37 (1890). In a case remarkably similar to the instant case, *Jameson* v. *Kimbrough,* 209 Tenn. 519, 526 (1962), the Supreme Court of Tennessee explained that the sale to the second highest bidder "did not amount to a private sale but was a sale then and there when all parties were present." The court concluded, "[a]s long as the announcement [that, if the highest bidder defaulted, the second highest bidder could purchase the property] was made . . . it would not be necessary for the Trustee to again cry or readvertise the property and ask for bids when he has made this statement to all those present." *Id.* at 528.

Chemical Bank's duty was to protect the interests of the mortgagor, see *Seppala & Aho Constr. Co., supra,* as well as its own interests, by ensuring that the bid on the property was fair and reasonable and represented the fair market value of the property. Indeed, Dundas lost nothing from the sale to Maher and its interests were protected because Chemical Bank credited Dundas with the full amount of Sheehan, III's bid of $425,000. Further, because the published notice was not misleading as to the description of the land or the other terms of the sale, the conditional sale is valid. See, e.g., *Jameson, supra.* In these circumstances, there is no reason to invalidate the sale to the defendants.

The plaintiffs' reliance on *Fontenot* v. *Garland,* 352 So. 2d 251 (La. Ct. App. 1977), is misplaced. In that case, the court noted that the property was not described adequately in the published notice. The court there was concerned that, "to permit auctioneers to make changes in the legal advertisement at the time of offering the property for sale at the auction, would open up auction sales to fraud and misrepresentations." *Id.* at 255-256. In the instant case, the published notice did not mislead potential bidders. The term announced orally simply clarified the process by which the property would be sold.[12]

---

[12] The plaintiffs' reliance on *Brewer* v. *Cowan,* 220 La. 189 (1951), is also misplaced. In that case, after failure of the highest bidder to complete

A declaration should be entered that the oral announcement of the term that the property would be sold to the second highest bidder if the highest bidder defaulted did not invalidate the sale and that the transfers of the property from Chemical Bank to Maher and from Maher to Aframe and McGee are valid in so far as the question of invalidity is based on the oral announcement of the term at issue. A declaration also should issue that Sheehan, III, has no right to purchase the property and that Dundas has no right to redeem the property based on the oral announcement of the term at issue. The judgments granting the defendants' motion for summary judgment and denying the plaintiffs' motion for summary judgment on the matters at issue are affirmed.

*So ordered.*

the sale, the second highest bidder moved to compel sale to him. The court dismissed the second highest bidder's action. In contrast to the instant case, in *Brewer,* the fact that the sale would be made to the second highest bidder never was announced at the auction or made a term of the sale.