## WEBSTER *v.* HAWORTH.

Where a party purchased real estate, at an execution sale, upon the faith of the representations of the judgment-creditor, that his judgment was the first on the property, when, in fact, there were prior incumbrances on it of more than its value : *Held,* that the purchaser should be relieved, and the judgment-creditor should be estopped from claiming an advantage resulting from his own misrepresentations.

It makes no difference whether the misrepresentations were made willfully or ignorantly, or that the action against the purchaser was brought in the name of the sheriff.

Ordinarily, the maxim of *caveat emptor* applies to judicial sales, but it has many limitations and exceptions.

The return on an attachment cannot be amended so as to postpone the rights of creditors attaching subsequently, but before the collection.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This is an appeal taken by the defendant from a judgment rendered against him in the Court below, in an action brought by the sheriff of San Joaquin county, against defendant under the two hundred and twenty-fourth and two hundred and twenty-fifth sections of the Practice Act, to recover the sum of six hundred and seventy-five dollars—a loss alleged to have been sustained by reason of defendant refusing to pay the amount bid by him for certain property in the city of Stockton, viz. : Lot 11, block M, west of Centre street, with the improvements thereon, at sheriff's sale thereof, under an execution issued from the District Court of San Joaquin county upon a certain judgment therein recovered by one William M. Ryer in a certain cause against Adams & Co.

Defendant, upon the trial, admitted the rendition of the judgment in the case of Ryer *v.* Adams & Co., the levy and sale under the execution issued therein; that defendant purchased the same at such sale, and subsequently refused to pay the amount of his bid.

That he had notice from the plaintiff of the re-sale of said property; that said property was re-sold, and that the difference in the price at the different sales was six hundred and seventy-five dollars, but contended that the sheriff, although nominally plaintiff, was not the real party in interest, but that one Wm. M. Ryer, was, at the time of the sale of the property as aforesaid, to defendant, the real party in interest; that said Ryer, who was the owner of the judgment, under which the sale was made, was present at the sale, and for the purpose of inducing defendant to purchase the same, falsely and fraudulently represented that the judgment under which the property was to be sold, was the first and paramount lien, attachment, or incumbrance upon the same, and that if defendant would purchase the same, he would thereby acquire a full and unembarrassed title thereto.

3

That since said sale, as aforesaid, defendant had discovered the representations of plaintiff to be false and untrue, and that the said judgment of Ryer v. Adams & Co. was not the first or paramount lien upon the said property, but that it was an inferior one, and subject to other liens, amounting in value to more than the value of the premises sold.

The testimony of Hyer, a witness on the part of the defence, was as follows:

"I asked the sheriff how the property was to be sold. He referred me to Doctor Ryer. I asked Doctor R. how the property was to be sold, and if his lien was the first and paramount lien. He told me that it was; that he had discovered the property himself, and had caused the first attachment to be levied upon it, and that all he wanted was to get his money out of it. I then said: 'So, if we buy under the execution, we will obtain a title which will be superior to any lien, judgment, or attachment, against Adams & Co.' He replied that we would. I then turned to defendant, Haworth, and told him that he might bid upon the property, and if it was not as Ryer said, he would not be bound by his bid. Defendant bid on the property under those representations."

It was further shown that on the eighteenth of July, one thousand eight hundred and fifty-five, Ryer commenced suit by attachment against Adams & Co., but the sheriff's endorsement upon the writ which was filed in the recorder's office on the twenty-ninth of August, one thousand eight hundred and fifty-five, showed that the levy was not made upon the premises bought in by Haworth, to wit: lot eleven, block M, west of Centre street, but upon lot eleven, block N, west of Centre street. That this mistake was corrected by the order of Court in January, one thousand eight hundred and fifty-six, but that in the meantime, various judgments had been rendered against Adams & Co., the liens of which, held the property, and that, in the aggregate, they exceeded the value of the property bid in by Haworth.

The Court below found, among other things, that the representations of Ryer were not falsely and fraudulently made, and rendered judgment for plaintiff for six hundred and seventy-five dollars, and costs, from which this appeal was taken.

*Winans & Hyer* for Appellant.

The attachment of Ryer, the actual plaintiff, was not a first and paramount lien on the premises sold. It was no lien at all on them.

1. Because, before the levying of the said attachment, the premises had been conveyed from Alvin Adams, the admitted owner, by I. C. Woods, his attorney, to James Birch, to whom possession was delivered; then by Birch to California Stage Com-

pany, to whom possession was delivered; then by California Stage Company to Dillon, to whom possession was delivered; and all the conveyances had been recorded, in their due order, in the office of county recorder of San Joaquin county.

But the plaintiff contends that the levy of the attachment was valid, because the power of attorney from Adams to Woods did not appear of record.

This proposition is not tenable. Even though a deed prior to the levy of an attachment is unrecorded, yet, if possession followed the delivery of the deed, such possession is implied notice to the attaching creditor, and as effectual a public notice as a registry, and an attachment levied on the property, in disregard of such notice, creates no lien. Priest v. Rice, 1 Pick., 167.

2. Because the attachment, as filed in the recorder's office, did not show a levy upon the premises in question, but upon other premises. There was no copy filed with the recorder, containing, or together with, a description of the property attached, as required by section one hundred and twenty-five of the Practice Act.

An attachment is in derogation of the common law, and it is to be executed in strict accordance with the statute. Moore v. Hamilton, 2 Gilman, 429; 27 Maine, 449; 21 Pick., 197–199; 1 Texas, 17; 20 Vermont, 612.

To constitute notice, it must be served and executed in the manner pointed out by law. Davenport v. Lacon, 17 Conn., 278.

To give it effect, it must appear affirmatively that the statute has been complied with. Cox v. Johnson, 12 Vermont, 65.

The statute must be complied with by a proper filing. Tarpley v. Homer, 9 Smedes & Marshall, 310.

Courts will only give effect to the return of officers when the intention is sufficiently disclosed by the language used, otherwise not. Hathaway v. Larrabee, 27 Maine, 449; LeBarron Putnam v. Hall, 3 Pick., 445, and cases there cited; Kittredge v. Bellows, 7 N. H., 399; Sargeant v. Pearce, 2 Metcalf, 80.

3. The rights of a subsequently attaching creditor will not be affected by the amendment of a mistake in the first attaching creditor's writ, though appearing manifestly on the face of the writ to be a slip. Danielson v. Andrews, 1 Pick., 156; Wills v. Crocker, 1 Pick., 204; Fairfield v. Baldwin, 12 Pick., 385, 395.

Conceding all that respondent claims in his brief, viz., that the doctrine of *caveat emptor* applies to purchasers at sheriffs' sales, yet this sale does not refer to cases where the party, on whose behalf the sale is made, and who alone is interested therein, makes representations and statements that the title is good, when it is not. In such cases, another and higher doctrine of the law steps in, viz.: that "no man can take advantage of his own

wrong." Pichard v. Sears, 6 Ad. & Ellis, 469; Gregg v. Wells, 10 Ad. & Ellis, 90, 98.

And this applies, whether the misrepresentation is willful or unintentional, if the other party be misled or injured by it. Harrison v. Ruscoe, 15 Meeson & Wellsby, 231; Broom's Leading Maxims, 3 Ed., 1852, p. 206; 2 Phillips on Evidence, C. and H. notes, 200; Welland Canal Company v. Hathaway, 8 Wend., 489; Tufts v. Hays, 5 N. H., 453; Swartz v. Moore, 5 Serg. & Rawle, 257 et seq.; Gosling v. Birnie, 7 Bingham, 339; Stephens v. Baird, 9 Cowen, 274; Wallis v. Truesdell, 6 Pick., 455; Hollister v. Johnston, 4 Wend., 642; Den v. Oliver, 3 Hawks, 479.

The misrepresentation having been the inducement of the other party to act, operates by way of estoppel on the party misrepresenting, and he is estopped from taking advantage of his misrepresentations, or denying the truth of that which he alleged to be true.

*Baine & Bouldin* for Respondent.

The appellant failed to show that the representations made by Dr. Ryer, the party for whose benefit the lot was sold, were made with a fraudulent intent, as matter of fact. Nor do the representations proven amount to fraud in law. There was no relation of confidence and trust existing between the parties. They were strangers to each other, in person, in business, and in interest. Haworth acted mainly in the matter by his attorney and legal adviser. The same means of knowledge, the records, were open to the appellant Haworth, and his legal adviser, as to Dr. Ryer. It was gross negligence, in the appellant and his legal adviser, to apply to a doctor of medicine, instead of examining the records, to ascertain the condition of the title to the property he was about to purchase. See 1 Story's Equity, 5th edition, §§ 191–208 (§ 200 a;) Anderson v. Bennett, 5 Howard's Miss. R., 167; Bell et al. v. Henderson et al., 6 ib., 313.

The questions of title to the lot purchased, and priority of liens, cannot be inquired into in this suit. The rule *caveat emptor* applies in all its strictness, in sales made by sheriffs. 11 U. S. Digest, p. 213, § 37, p. 214, § 48; 7 ib., p. 249, § 85, p. 250, § 111; 2 Bailey's S. C. R., 480.

But Ryer's attachment was, in point of fact, the first attachment on the lot, and his lien attached from the time the Sheriff entered upon the land for the purpose, and actually posted a copy of the writ on the land. From that time the property was retained by him, to answer Ryer's judgment. Practice Act, § 130. The filing the copy of the writ, and description of the property attached, in the recorder's office, and the subsequent amendment, by relation, refer to the first act, that of posting the writ upon the premises. Jackson ex dem. De Forest v.

McMitchell, 3 Cowen, 75. For the amendment, see 5 Howard, 173 ; 4 Smedes & Marshall, 409.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

This action was brought under the two hundred and twenty-fourth and two hundred and twenty-fifth sections of the Practice Act, for an alleged loss arising from the refusal of the defendant to pay for certain property purchased by him at sheriff's sale. The answer admits the facts charged in the declaration, but alleges that the defendant was induced to purchase, through the misrepresentation of Ryer, the real party in interest, the sheriff being only a nominal party. The testimony shows that the property in question was sold at sheriff's sale to satisfy a judgment of Ryer ; that immediately before the sale took place, the defendant, through his attorney, inquired of Ryer, who was present, whether his judgment was the oldest lien on the land, and whether the purchaser at the sale would obtain a clear title to the same, free from all incumbrances. Ryer replied that his was the oldest attachment and judgment, and that the purchaser would take the property clear of all charge or incumbrance. Upon the faith of these representations, the defendant purchased ; afterwards, it turned out that Ryer's judgment was not, in point of fact, the oldest lien upon the lot sold, and that there were incumbrances upon it to more than twice its value. Ryer's attachment was levied on the eighteenth of July, 1856. The one hundred and twenty-fifth section of the Practice Act provides that real property shall be attached by leaving a copy of the writ with the occupant thereof, and filing a copy, together with a description of the property attached, with the recorder of the county.

The return of the sheriff, filed in recorder's office, shows that the attachment was levied on lot eleven, in block N, and not lot eleven, in block M. This was afterwards corrected on application to the District Court, but before the correction was made other attachments had intervened.

It will hardly be necessary to enter into any argument to show that the first attachment could not bind property not described in the return of the officer, and that the subsequent attaching creditors were not postponed to the satisfaction of Ryer's judgment. The case, then, turns upon the question whether Ryer is estopped by his declarations and representations made to Hyer, the attorney of the defendant.

In this view of the case, it is immaterial whether Ryer made such representations, knowing them to be false, or whether he was ignorant of the facts altogether. 1 Story's Eq. Jur., § 193. It is sufficient, if they were untrue, and at the same time a material inducement to the purchase, and that the defendant acted

on the faith of them, which is indubitably true. It is said that the maxim *" caveat emptor,"* applies to judicial sales, and that the defendant cannot avail himself of the misrepresentations of the plaintiff, as he had access to the records of the county, and might have informed himself upon the subject. Grant that the maxim *caveat emptor* applies to sheriffs' sales, it has never been carried to the extent that such a sale could not be impeached on the ground of fraud or misrepresentation. The maxim only applies thus far, that the purchaser is supposed to know what he is buying, and does so at his own risk. But this presumption may be overcome by actual evidence of fraud, or it may be shown that in fact the party did not know the condition of the thing purchased, and was induced to buy upon the faith of representations made by those who, by their peculiar relations to the subject, were supposed to be thoroughly acquainted with it. The fact that the defendant might have examined the public records does not alter the case. Before such an examination could have been had, the sale would have been over, and he would have lost the opportunity of the purchase. If, under these circumstances, he applied to the judgment-creditor for information, and, acting upon that information, was misled to his prejudice, he should be relieved, and the actual party in interest estopped from claiming an advantage, resulting from his own misrepresentations of facts, whether willfully or ignorantly made.

Judgment reversed, and cause remanded.