SHERLOCK, SHERIFF, RESPONDENT, v. VINSON, APPELLANT.

(No. 6,760.)

(Submitted May 20, 1931. Decided July 3, 1931.)

[1 Pac. (2d) 71.]

*Mr. E. G. Toomey,* for Appellant, submitted a brief and argued the cause orally.

*Mr. C. A. Spaulding,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was brought by the plaintiff as sheriff of Broadwater county against the defendant to recover the difference in the amount bid by defendant for certain property struck off to him at execution sale, and the amount which the officer received upon a resale. After the issues were made up, the cause was brought before the court sitting without a jury and judgment was rendered against the defendant for the sum

of $574.70, the amount of the difference, with interest from the date of the sale to the date of judgment. Thereupon defendant caused a bill of exceptions to be settled and appealed from the judgment.

It appears that the Helena Adjustment Company was the owner of two judgments, one against the Golden Curry Consolidated Mining Company, a corporation, and the other against John Rothfus. There was a sheriff's sale of certain mining claims, alleged to belong to the corporation at Boulder, the county seat of Jefferson county, about July 1, 1929, which I. R. Eidell, the manager of the Helena Adjustment Company, and defendant attended and at which defendant purchased the corporation's interest in the claims. Eidell testified that upon the way back to Helena defendant said to him that "if he ever had anything against Mr. Rothfus to please let him know, that he would go and make a bid," to which Eidell said that he intended to have an execution sale at Townsend, in Broadwater county, in two or three weeks upon a judgment against Rothfus. Eidell testified that defendant went with him upon the train to the sheriff's sale which was advertised to take place at Townsend on the thirteenth day of July, 1929, and on the way to Townsend he showed defendant a copy of the sheriff's notice of sale as published in a Townsend newspaper. The undersheriff testified that he read the notice of sale in the hearing of defendant before he called for bids.

In the notice the sheriff advertised that, at the time and place fixed, he would sell "all of the right, title and interest of said defendant John Rothfus in and to the following mining claims situated in the Dog Town or Cedar Hills district, Broadwater county, Montana," naming the claims. Bids being called for, Eidell, representing the Helena Adjustment Company, bid $974, and defendant bid $974.70. There being no further bids, the property was struck off to the defendant, who gave the sheriff a check for the amount of his bid. On the next day defendant stopped payment of the check. The sheriff did not tender to the defendant a certificate of sale of the property, but if he had done so defendant would not have accepted it.

Defendant said he would not have paid the amount he bid even if he had been tendered a certificate of sale, "for the simple reason that the certificate of sale was no good." The sheriff thereupon re-advertised the property for sale and on September 14, 1929, sold the same to the Helena Adjustment Company for the sum of $400; that being the highest and best bid received therefor.

The action is grounded upon the following statute: "If a purchaser refuses to pay the amount bid by him for the property struck off to him at a sale under execution, the officer may again sell the property at any time to the highest bidder, and if any loss be occasioned thereby, the officer may recover the amount of such loss, with costs, from the bidder so refusing, in any court of competent jurisdiction, and the person refusing to pay the costs which have accrued by reason of his bid shall be deemed guilty of contempt of court, and punished accordingly." (Sec. 9436, Rev. Codes 1921.)

1. Under the circumstances, tendering a certificate of sale ▮ to defendant would have been an idle ceremony. The law neither does nor requires idle acts. (Sec. 8761, Rev. Codes 1921; *Oscarson* v. *Grain Growers' Assn.*, 84 Mont. 521, 277 Pac. 14.)

2. Appellant's counsel argues that the execution under ▮ which the sales were made was void because of material defects in the manner of its issuance, but with this we disagree. Such defects as appear amount at most to no more than irregularities.

3. It is insisted that before advertising the sale the sheriff ▮▮ did not make a levy upon the property, although in his return he says he did. Conceding that he did not, this gives appellant no cause for complaint. As is said in *Blood* v. *Light*, 38 Cal. 649, 99 Am. Dec. 441, the purchaser "is bound to see that there is a judgment which is not void, and an execution which is regular upon its face; but as to all the acts of the officer under the execution which precede the sale, he may rely upon the legal presumption that they have been duly performed." It is only requisite that the purchaser show a sale,

and the authority of the officer to make it. "The deed shows the former, and the judgment and execution, prove the latter." (*Hibberd* v. *Smith,* 67 Cal. 547, 56 Am. Rep. 726, 4 Pac. 473, 484.) The title of the purchaser is not affected by the failure of the officer to show in his return that he levied before selling. (*McFall* v. *Buckeye Grangers' Warehouse Assn.,* 122 Cal. 468, 68 Am. St. Rep. 47, 55 Pac. 253.)

"Whether the officer has performed his duty, lies between him and the parties to the writ, and the purchaser cannot be prejudiced by his remissness or neglect." (*Blood* v. *Light, supra; Hibberd* v. *Smith, supra.*)

4. Defendant pleaded that the claims at the time of the execution sale of July 13, 1929, and for many years prior thereto, were the sole and exclusive property of the Golden Curry Consolidated Mining Company and the said John Rothfus had no right, title, or interest therein at the time of the alleged levy and alleged sale of the claims. Upon plaintiff's motion these allegations were stricken out, as was also the second affirmative defense of the answer alleging for the same reasons "that there was a total failure of title at said execution sale on July 13, 1929." Under the condition of the pleadings the court did not err.

The rule of *caveat emptor* applies to execution sales. The purchaser at a sale of real property on execution acquires all of the right, title, interest and claim of the judgment debtor therein and no more. (*Story* v. *Black,* 5 Mont. 26, 51 Am. Rep. 37, 1 Pac. 1, followed in *MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436.)

"The sale by sheriff excludes all warranty. The purchaser takes all risk. He buys on his own knowledge and judgment. *Caveat emptor* applies in all its force to him. If this were not the law, an execution, which is the end of the law, would only be the commencement of a new controversy; the creditor kept at bay during a series of suits, before he could reap the fruits of his judgment and execution." (*Smith* v. *Painter,* 5 Serg. & R. (Pa.) 223, 9 Am. Dec. 344; and see *Meherin* v. *Saunders,* 131 Cal. 681, 54 L. R. A. 272, 63 Pac. 1084.)

Each bid is considered made for such title as the defendant may have, and therefore the bid is binding whether the defendant had any title or not. (Freeman on Executions, 3d ed., sec. 313h; note to *Burns* v. *Hamilton's Admr.*, 70 Am. Dec. 572–574.) While this is the general rule, undoubtedly it is subject to the exception that the purchaser may be relieved from his bid if it has been induced by fraud practiced upon him by the execution creditor (*Webster* v. *Haworth*, 8 Cal. 21, 68 Am. Dec. 287; note to *Burns* v. *Hamilton's Admr.*, 70 Am. Dec. 570, 572 et seq.) as defendant sought to plead and prove. We agree with counsel for plaintiff that this defense was not sufficiently pleaded. (*Lee* v. *Stockmen's Nat. Bank*, 63 Mont. 262, 207 Pac. 623; *Power & Bro.* v. *Turner*, 37 Mont. 521, 97 Pac. 950.)

It is pertinent to remark at this point that whatever the undersheriff said, as to the title defendant would receive upon the sale, furnishes no legal excuse for the nonpayment of the bid. It is not the sheriff's business to pass upon the title of property he offers for sale pursuant to execution. (Freeman on Executions, 3d ed., sec. 313h.)

5. It is argued that defendant cannot be held liable because no notice of resale was given him. Upon this point there is a division in the authorities as there is upon the general subject of execution and judicial sales. We think our statute was framed to avoid this confusion, but is not as clear as it might be. The statute says that when the purchaser repudiates his bid, the sheriff "may again sell the property at any time." It is notable that it does not say the sheriff "may again sell the property at any time *upon notice to the defaulting purchaser.*" While the sheriff is ordered by an execution to sell property pursuant to a judgment, and ordinarily does so at the behest of the execution creditor, he is nevertheless a trustee for the debtor as well as the creditor in executing the writ and conducting the sale. If the property sells for more than enough to pay the judgment and costs, he is in duty bound to pay the overplus to the judgment debtor unless

otherwise directed by the judgment or order of the court. (Sec. 9431, Rev. Codes 1921.)

It is unnecessary for us now to delimit the phrase "at any time." In this case it appears that the sheriff regularly re-advertised the property for sale and the notice given by him was notice to all the world, including the defendant. No good reason appears to make a favorite of one who bids in property at sheriff's sale and repudiates his bid. He is bound to apprehend that loss may follow his act, and that another sale must needs be had. It behooves him to keep advised so that he may protect himself upon the resale. He is presumed to know the law will hold him if loss results.

6. It is argued that defendants cannot be held liable because no loss is shown. This position is not tenable. When the execution was issued on June 11, 1929, there was due upon the judgment approximately $770. With this point will be discussed defendant's assignment of error that the court erred in sustaining plaintiff's objection to the offer of proof that John Rothfus had had no interest of any character in the seven mining claims which were offered for sale and upon which defendant bid, since June 15, 1907.

The property sold for $974.70, and upon resale for $400. The court rendered judgment for the difference, $574.70. The judgment creditor was entitled to enough to satisfy his judgment, no more. Thus on the first sale, if defendant had made good his bid, the sheriff would have had in his hands the overplus—the difference between the amount of the Helena Adjustment Company's judgment and the amount for which the property had sold, approximately $205. This latter sum would have been payable to the judgment debtor. But if the judgment debtor has no interest in the property sold he is not entitled thereto. He has no right to demand it from the sheriff and would be unjustly enriched if the sheriff paid it to him.

The general rule seems to be that the amount of the bid, not the value of the property, is the measure of the sheriff's recovery. But under the statute the sheriff, who is the only

one entitled to maintain the action, can recover from the defaulting purchaser only the amount of the loss, with costs. If the defaulting purchaser can show that the judgment debtor had no interest in the property sold, and therefore is not entitled to the overplus, he (the defaulting purchaser) can cut down the sheriff's recovery against him to the difference between the amount received upon the resale, and the amount actually due the judgment creditor, plus the sheriff's costs. This case furnishes a concrete example: The judgment creditor was entitled to $770; upon the resale the property sold for $400, leaving due the creditor $370, plus the sheriff's costs. This amount only the sheriff is entitled to recover, together with costs of suit. The defendant was entitled to show that Rothfus had not any interest in the property sold upon and prior to the day of sale in order to minimize the amount of the judgment against him, and should have been permitted to do so under his general denials. In refusing the proffered evidence upon this point the court erred to the defendant's prejudice.

7. Defendant's counsel upon the morning of the argument moved for leave to amend his brief by adding assignments of error. In view of the result it is unnecessary to pass upon this motion. We are liberal in permitting the amendment of briefs, including the addition of an assignment of error, provided it is done in ample time before the argument so that no advantage will be taken of the respondent, but the practice of asking to add assignments of error on the morning of the hearing does not meet with our approval.

The judgment is reversed and the cause remanded for a new trial.

Associate Justices Galen, Ford, Angstman and Matthews concur.