GRIMES, Judge.
This is an interlocutory appeal from an order which set aside a clerk’s sale and vacated a final judgment.
The land involved in the suit was originally owned by Carl R. McMullen. On May IS, 1972, Mr. McMullen and his wife, Margaret (appellee herein), were divorced. The judgment of dissolution of marriage awarded Margaret a special equity in the land to the extent of an undivided one-half interest. In August of 1973, Mr. and Mrs. William P. O’Malley (appellants) acquired by fee simple deed Mr. McMullen’s interest in the land. Thereafter, appellants instituted a partition suit against appellee. Prior to final hearing and at a time when there were pending several motions filed by appellants, the parties signed a stipulation whereby they agreed to the entry of a judgment of partition. The judgment was duly entered in the form attached to the stipulation.
The portions of the judgment pertinent to this appeal read as follows:
“2. That in the absence of amicable agreement to the contrary, the property described in the Complaint shall be sold for cash to the highest and best bidder by the clerk of this Court on the east-north steps of the Courthouse at Clear-water, Florida on December 27, 1973, at the hour of 11:00 A.M.
“3. That each bidder at such sale shall, upon demand of either party to this cause, be required to satisfy the clerk of this Court that such bidder has in hand sufficient sums of cash or equivalent to tender if required to pay, fully and forthwith the amount of such bid at the time the same is entered, subject to the further provisions of this order including those provisions relating to bids for credit by the parties.
“4. That bidding shall begin at an amount not less than $22,503.39 which is the sum believed by the parties as being the unpaid balance of the mortgages described in the Complaint. The Defendant, MARGARET E. McMULLEN, shall be entitled to bid for credit to the said sum of $22,503.39. The Plaintiffs and all other bidders shall be required to have in hand cash or equivalent at least equal to $22,503.39, the represented amount of said mortgages. For all amounts in excess of $22,503.39, the Plaintiffs and Defendant shall each be equally entitled to bid for credit one-half the amount of such excess.”
The judgment further provided that if a stranger to the cause was the successful bidder, the amount of the bid would first be used to pay off the mortgages with the balance being divided equally between the parties. If either of the parties was the successful bidder, the other party would be paid in cash one-half the amount of the bid in excess of that necessary to satisfy the mortgages and the successful bidder was to be solely responsible for the payment or satisfaction of the mortgages and hold the other party harmless therefrom.
A deputy clerk of the court thereafter conducted the sale in which he sold the property to appellants for a bid of $24,000.-00. Appellee filed an Objection to Sale and a hearing was held before the chancellor who had entered the judgment of partition. The facts hereafter set forth are taken from the transcript of the hearing. While much of the narrative were the un-sworn statements of counsel, both sides apparently concede that these statements may *381 be considered as true for purposes of this appeal.
From the transcript it appears that just prior to the time appointed for the sale, the clerk announced that under the terms of the judgment any prospective bidder in order to bid had to have cash or its equivalent on his person in the amount of his bid. When this announcement was made, appel-lee’s counsel attempted to induce the clerk to delay the sale for a short period so as to allow prospective purchasers to procure cash or its equivalent, but the clerk refused. Among those present at the sale was a Mr. Levine who appellee says was going to bid up to $75,000.00 for the land. However, Mr. Levine did not have cash or its equivalent on his person. When the sale commenced, appellee made her initial bid in the amount of the credit provided her in the judgment. Appellants made a higher bid and tendered a certified check. Appellee raised the ante, covering her increase with cash. Appellants then bid $24,000.00 in the form of a certified check. At that point, no other bids were made, and the property was struck off to appellants.
The judge observed that the procedure customarily followed in Pinellas County for judicial sales of property for cash was to begin the sale at 11:00 A.M. and allow the high bidder until the banks closed at 2:00 P.M. to produce legal tender in acceptable form to make good his bid. He said that despite the fact that the language of this judgment was somewhat different and more specific with respect to the bidder’s requirement of producing cash, it was his intent that this sale be conducted like any other. Consequently, he ordered the sale set aside and directed that a new sale be held according to the established procedure.
At the hearing, appellee’s counsel tendered a $75,000.00 certified check of Mr. Levine said to be available to buy the property. However, the judge stated that he was not setting aside the sale because of an inadequate sales price. He specifically declined to pass on that issue because there was no sworn testimony submitted as to valuation. It is apparent, however, that he was persuaded that the procedure followed by the clerk had the effect of “chilling” the sale. As it worked out, if the sale were confirmed, appellants would pay $22,503.39 of the purchase price to satisfy mortgages which already encumbered the property (albeit, for which they were not personally liable) and the balance would be split between the parties. Thus, it would appear that all appellee would have received for her interest in the property is $748.31 and an indemnification from personal liability on the notes which were secured by the mortgages.
When it was evident that the judge had made up his mind to invalidate the sale, William P. O’Malley, who is an able practicing attorney and who was then representing his wife and himself, said that if the judge were determined to take this course of action, he would rather have the judgment set aside and proceed with the lawsuit as if no stipulation or judgment had ever been entered. Therefore, the court not only set aside the sale but also set aside the judgment. As a consequence, appellee has filed a motion to dismiss this appeal. Conceding that the order setting aside the sale and ordering a resale of the property would have been appealable by way of interlocutory appeal, appellee asserts that appellants’ conduct in requesting the court to set aside the judgment constituted a waiver of any error inherent in and any right of appellants to appeal from the order setting aside the sale. In short, it is argued that appellants, having requested the order setting aside the judgment, cannot appeal therefrom.
While Mr. O’Malley did ultimately take the position that he desired the judgment be set aside, it is obvious that he did so only because the judge had determined to set aside the sale and order a new one following a procedure Mr. O’Malley be *382 lieved to be contrary to the dictates of the judgment. We do not believe that appellants’ action under the circumstances deprived them of the right to an interlocutory appeal on the merits of whether the court properly set aside the sale. Accordingly, appellee’s motion to dismiss is denied.
Appellants urge that the language of paragraph 3 cannot be read except to require each bidder to then and there tender cash or its equivalent at the time he makes his bid. The main thrust of appellants’ argument is that the judgment of partition was a consent judgment which could not be altered by the court without the consent of the parties in the absence of fraud or mutual mistake.[1] Thus, appellants contend that the parties having agreed to the sale being conducted in this manner, the court was powerless to require an alternative procedure.
Admittedly, the language of paragraph 3 appears to bear out appellants’ contention. There was no showing of fraud, and if there was any mistake, it was unilateral. The primary issue, then, is whether the chancellor had the authority to alter the wording of the consent judgment as it related to the mechanics of the sale or to construe it in a manner different than it appeared on its face in order to accomplish what he conceived to be an equitable purpose. To put it another way, can it be said that by virtue of having signed the consent judgment, a court of equity is powerless to undo a judicial sale where the procedures employed in the conduct of the sale, while in literal compliance with the wording of the judgment, were contrary to what the court intended and have the effect Of pre-clucjing free and unrestricted bidding?
A partition sale is subject to confirmation,[2] and the law is well settled that - whether or not to confirm a judicial sale rests within the sound discretion of the chancellor.[3] In Watson v. Vafides, Fla.App.lst, 1968, 212 So.2d 358, the court said:
“A judicial sale, at the best, does not generally afford the most advantageous forum for the sale of property, and if the chancellor is of the opinion that the sensitive concern of equity will be best satisfied by not confirming a specific foreclosure sale, then the record should clearly show that the chancellor has abused his discretion before an appellate court will hold him to be in error.”
We refuse to conclude that the fact that a judgment was entered upon the consent of the parties must bring about the abrogation of these principles.[4]
The parties had a right to agree as between themselves. However, their agreement was not self executing. They were calling upon the court to bring it into fruition by conducting a public sale. We doubt that anyone would suggest that simply because the parties agreed to it, the court would be required to enter a judgment calling for a sale to be conducted in a manner which the court did not believe to be fair. The record reflects that in signing the consent judgment, the chancellor assumed, without having considered the specific language of paragraph 3, that the sale would be conducted in the same manner as other judicial sales with which he was familiar. It is evident that had it been explained to him how the sale was going to be conducted, he would have *383 refused to sign the judgment in that form. In fact, the judge said:
“There is no use in exercising everybody unnecessarily because we can’t give interpretations that are unduly restrictive or restrained or unusual or out of the acceptable pattern that has already been developed and regardless of different interpretations of a particular clause, the fundamental, I think that we have to add hereto is this, that if we have a sale, it has to be a full-blown sale with every opportunity to everybody, I think, and regardless of the language, I don’t think that an interpretation of a few words is justification for overriding a fundamental and to me, what we all wanted was the customary, complete, open sale with free opportunity for everybody interested to bid in a sensible and practical fashion and if any interpretation in -any judgment restricts a fundamental or intrudes upon the fundamental sense of what we are trying to accomplish, then the language has to fall and the fundamental has to survive. . . . ”
It should be noted that the partition judgment itself provided for the court to retain jurisdiction “for the further purpose of settling and disposing of any of the executory provisions of this judgment.” At that point, the conduct of the sale was an exec-utory matter over which the court retained the right to regulate for the purpose of seeing that equity was accomplished.
In State v. Baskin, 1933, 111 Fla. 667, 150 So. 517, the Florida Supreme Court said:
“ . . . The power of the courts to revise their judgments and decrees for the protection of adjudicated rights in relation to changed conditions that affect those rights with respect to their judicial enforcement is inherent, and is the same whether the decree or judgment was entered by consent or after litigation. See United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999.”
In holding that the chancellor had a right to set aside the sale and to alter the judgment to the extent necessary to make certain that the new sale was conducted in the usual manner, we do not reach the point of holding that the court would have had the right to go behind the agreement of the parties as it related to the substantive aspects of the settlement of their dispute.[5] Until such time as it appeared that appellants might be able to acquire the property for a price they were willing to pay, both parties were presumably interested in having the property sold at the highest possible price. The procedure by which the sale was to be conducted did not inhere in the settlement of the dispute between them.[6] The manner in which the sale was to be made constituted nothing more than the mechanics of how the settlement was to be consummated. Appellants do not assert that they insisted upon this specific language as part of their settlement because they thought it would result in driving the price down so they could buy the property for less.
It should be noted that the recommended form for final judgment of foreclosure (form No. 1.996) in the Florida Rules of Civil Procedure, 31 F.S.A. specifies that the clerk of the court shall sell the property at public sale “to the highest bidder for cash.” Courts have uniformly held that promissory notes or personal checks are not acceptable tender at a public sale for cash.[7] Hence, the question might *384 properly be asked whether that language, assuming it be traditional language, would mandatorily require the clerk to insist on cash or its equivalent to be furnished at the time of making a bid. The fact that there is so little law on this subject suggests the probability that the clerks of our circuit courts are able to work it out along practical lines such as that followed in Pi-nellas County. Obviously, it would be ridiculous to require each bidder to come to a public sale with a satchel full of money, and one could not very practically bring certified checks because he would not know how much it was going to take in order to become the successful bidder. If the highest bidder is given a reasonable time within which to come up with the cash, no one should be hurt. The determination of what constitutes a reasonable time is left to the clerk under the supervision of the court.[8] At the worst, if the high bidder does not put up the cash, the bidding is recommenced at the point where it was left off if the remaining bidders are still available.[9] Otherwise, a new sale can be conducted.
We hold that the chancellor had the inherent right to control the mechanics of the sale conducted under the court’s auspices and that he was not deprived of his authority because the judgment was in the form of a consent judgment. Having determined that the chancellor had this right, we cannot say that he abused his discretion in ordering that the sale be set aside and directing a new sale. Accordingly, the Order Invalidating Clerk’s Sale and Vacating Final Judgment is affirmed.
McNULTY, A. C. J., and BOARDMAN, J., concur.

. See Phillips v. Acacia Mut. Life Ins. Co., 1936, 124 Fla. 179, 168 So. 34; 47 Am. Jur.2d, Judgments § 1085.

. Fla.Stat., § 64.071, F.S.A.

. Stewart v. Hunter, 1913, 65 Fla. 325, 61 So. 623.

. See Smith v. One Super Wild Cat Console Mach. 1232, 973P, 1971, 6 Or.App. 482, 488 P.2d 847; Orban v. Stelle, 1940, 292 Mich. 341, 290 N.W. 821.

.This point was rendered moot because once the sale was set aside both parties concurred in setting aside their agreement.

. Cf. Smiles v. Young, Fla.App.3d, 1973, 271 So.2d 798.

. 86 A.L.R.2d 292.

. The case of Williams v. Continental Securities Corporation, 1944, 22 Wash.2d 1, 153 P.2d 847, provides a good discussion of accepted bidding procedures at public sales. See also Matthews v. Eslinger, 1955, 41 Tenn.App. 116, 292 S.W.24 543.

. Watson v. Vafides, supra.