No. 87-457

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

CONSTANTINE PROTO,

             Plaintiff and Appellant,

     -vs-

MISSOULA COUNTY, a political
subdivision of the State of Montana,

             Defendant and Respondent.

---

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Terry G. Sehestedt, Missoula, Montana

     For Respondent:

          Robert Deschamps, III, County Attorney; Joan Newman,
          Deputy County Attorney, Missoula, Montana

---

                              Submitted on Briefs:   Jan. 14, 1988

                                   Decided:   February 11, 1988

Filed:   FEB 1 1 1988

                              *Ethel M. Harrison*
          _____
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District, Missoula County, State of Montana. The appeal is from a motion to dismiss the complaint under Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief could be granted. Following briefing and oral argument, the District Court granted the motion dismissing the complaint with prejudice. Appellant now appeals. We affirm.

On January 21, 1987, pursuant to a writ of execution issued by the Missoula County Justice Court, the Missoula County Sheriff conducted a Sheriff's sale as a result of a judgment against the appellant, Constantine Proto (Proto). The Sheriff properly levied on Proto's property, consisting of one mink coat and one red fox coat. The Sheriff posted the legally required notice of sale pursuant to § 25-13-701, MCA. According to that statute, no indication as to form of payment is required. At the sale, the Deputy Sheriff announced that only cash would be accepted from any successful bidder and that personal checks would not be accepted.

At the January 21, 1987 sale, bids were received and accepted in the amount of $550 for the mink coat and $600 for the red fox coat. However, the successful bidders attempted to pay by check, and the checks were refused by the officer conducting the sale. The coats were then resold with the mink selling for $200 and the red fox selling for $500. This time payment was tendered in cash.

Proto alleges that he was damaged by the requirement that cash only would be accepted because bidders were not allowed to leave and obtain cash. Therefore, his coats were

2

sold for an amount which was considerably less than their true value.

Proto raises one issue for our review: Does the complaint herein state a claim for which relief may be granted?

Respondent, Missoula County, states the issue differently: Did the District Court correctly dismiss the complaint with prejudice because there was no breach of duty by the Sheriff's Deputy in the conduct of the execution sale of personal property for cash and thus no legal basis for the claims made?

Proto argues that the standard test for the sufficiency of a complaint against a motion to dismiss is set forth by the United States Supreme Court in Conley v. Gibson (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

This Court has repeatedly endorsed the same test. See, Busch v. Kammerer (1982), 200 Mont. 130, 132, 649 P.2d 1339, 1340. Proto argues that the County's motion to dismiss pursuant to Rule 12(b)(6), has the effect of admitting all well pleaded allegations of the complaint.

Proto, in his first count, has alleged that the Sheriff, in acting as described, failed to sell the coats to the highest bidder as required by § 25-13-704(1), MCA to Proto's detriment. Count two notes that the combined market value of the coats was $6,500 and that the restriction on the mode of payment, particularly in that it was only announced at the time of the sale, had a "chilling effect" on the

3

bidding resulting in the sale of the property for a grossly deficient price. The second count simply presents an alternative way of measuring Proto's damages, an issue not before this Court. The real meat of the issue is whether or not the Sheriff was justified in refusing to accept payment by check.

Sections 25-13-704(1) and 25-13-708, MCA are the primary code sections involved herein. Section 25-13-704, MCA, provides:

> (1) All sales of property under execution must be made at auction to the highest bidder, between the hours of 9 a.m. and 5 p.m. After sufficient property has been sold to satisfy the execution, no more can be sold. Neither the officer holding the execution nor his deputy can become a purchaser or be interested in any purchase at such sale.

> (2) When the sale is of personal property capable of manual delivery, it must be within view of those who attend the sale and be sold in such parcels as are likely to bring the highest price; and when the sale is of real property consisting of several known lots or parcels, they must be sold separately, or when a portion of such real property is claimed by a third person and he requires it to be sold separately, such portion must be thus sold. The judgment debtor, if present at the sale, may also direct the order in which property, real or personal, shall be sold when such property consists of several known lots or parcels or of articles which can be sold to advantage separately, and the sheriff must follow such directions.

Proto argues that the officer conducting the execution sale violated the requirement of § 25-13-704, MCA, in that he failed to sell the coats to the highest bidder.

This ties in with § 25-13-708, MCA, and it provides:

4

> When the purchaser of any personal
> property capable of manual delivery pays
> the <u>purchase money</u>, the officer making
> the sale must deliver to the purchaser
> the property and, if desired, execute and
> deliver to him a certificate of the sale.
> Such certificate conveys to the purchaser
> all the right which the debtor had in
> such property on the day the execution or
> attachment was levied. (Emphasis added.)

We agree that the problem revolves around what is meant by the words "purchase money." Proto contends it means the officer must take checks and the County takes the position that the Sheriff or his Deputy cannot take checks. It is Proto's position that the section simply means that the purchaser must pay for the item(s) by any customary means, before taking delivery. Proto admits that the meaning of "money" includes legal tender currency, but that his dictionary defines "money" to include checks and other customary means of exchange.

Absent a statute authorizing it, the sheriff may not accept credit or anything other than cash. See, 86 A.L.R.2d 292, 293. The terms of a judicial sale are prescribed by our statute to which the decree of sale must conform. While some courts have recognized a limited exception in which the judgment creditor consents to a bid paid by check, the general rule is that the execution officer is bound to accept only cash for the bid, as our statute requires. For the exception see, Metz v. Hicklin (Kan. 1928), 268 P. 823. Compare, O'Malley v. McMullen (Fla. 1974), 294 So.2d 379.

We believe the intent of the legislature regarding the type of payment at a personal property execution sale is clear from the reading of our statute which states payment must be by "purchase money."

Proto cites Sherlock v. Vinson (1931), 90 Mont. 235, 1 P.2d 71, as supporting his position on what is money and what can be accepted at an execution sale. However, this proposition was not at issue in Sherlock. The case is distinguishable from the present case on both the facts and the law. In Sherlock the sheriff accepted a check for payment and the buyer stopped payment the next day. The sheriff then sued the repudiating buyer. It seems to us that the result and the principles in Sherlock are more persuasive to the County's position, than to Proto's position.

We find no merit to Proto's argument that since there is a statutory duty to sell at a public auction to the highest bidder, the Sheriff has a duty to accept any medium of payment that is tendered. The duty to sell to the highest bidder in no way restricts the Sheriff's authority to announce what medium of payment will be accepted. See, § 25-13-708, MCA.

In addition, § 25-13-704, MCA, which requires public auction to the highest bidder, is a procedural statute prescribing the hours of sale and prohibiting the execution officer or deputy from becoming a purchaser. The statute really concerns itself with the method of the auction sale and not with the terms of the sale.

Additionally, Proto argues that the Sheriff has a duty at an execution sale to obtain a fair market value for the property. If he does not do so, he creates a "chilling" affect on bidding. We find no legal basis for such an argument. Also, Proto conceded in his brief that there was not a requirement that the Sheriff obtain full market value at the execution sale. This concession alone requires the dismissal of the complaint in its entirety because the sole claim of relief was for the amount based on a fair market value of the goods.

We find no validity to Proto's suggestion that the Uniform Commercial Code creates a duty by the execution officer to accept any medium of payment tendered. Nor do we find any authority that the Uniform Commercial Code is applicable to execution sales. The procedural authority and duty of the execution officers is set forth in our statutes addressing execution of judgment.

The order of the District Court dismissing the complaint is affirmed.

Justice

We concur:

Chief Justice

Justices

7

Mr. Justice John C. Sheehy, dissenting:

Section 25-13-708, MCA, contemplates that the actual cash may not necessarily be collected at the moment of sale. The section obviously empowers the officer to hold the personal property until he receives the cash. Thus the officer could take a check and hold the property until the check cleared the bank. In these days of checks and balances in business as in government, checks have become an accepted medium of exchange. The result here may have been a higher bid of checks were accepted. I dissent.

_John C. Sheehy_
Justice

- 8 -