No. 92-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

KEVIN MURPHY,

        Plaintiff and Appellant,

-vs-

HENRY BURGESS, Chairman,
Board of Pardons, et al.,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Kevin Murphy, Pro Se, Deer Lodge, Montana

        For Respondent:

        David L. Ohler, Attorney for Department of
Corrections and Human Services, Helena, Montana

Submitted on Briefs:  July 30, 1992

Decided:  December 30, 1992

FILED

DEC 3 0 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellant Kevin Murphy appeals from the decision of the Third Judicial District Court, Powell County, ordering dismissal of his complaint on the grounds that it fails to state a claim upon which relief may be granted. We affirm.

Appellant presented three issues for review by this Court.

1.   Did the District Court err when it dismissed appellant's complaint for failure to state a claim?

2.   Did the District Court violate the ex post facto clause when it applied the 1989 version of the parole statute, § 46-23-201, MCA, rather than the version of the statute in effect at the time appellant committed his crimes in 1984?

3.   Did the District Court err when it suspended discovery until the court ruled on the motion to dismiss the complaint?

On December 11, 1984, Kevin Murphy was arrested for the crimes of burglary and theft. On June 10, 1985, he was sentenced to ten years for each crime. The two sentences were to run consecutively for a total of a 20-year term. Murphy was committed to the Montana State Prison and was designated a dangerous offender. He was required to serve one-half of his sentence, less good time, before becoming eligible for parole.

In late 1990, Murphy was sent to the Billings Pre-release Center. In the spring of 1991, two months before his parole hearing, Murphy was found on two occasions using prohibited drugs and alcohol while in pre-release. Consequently, he was removed

2

from pre-release and placed in the Yellowstone County Detention Facility.

While he was housed at the Yellowstone County Detention Facility, Murphy wrote a letter to another inmate at Montana State Prison. The letter indicated Murphy "had a good time in pre-release." Murphy contends that prison officials illegally opened, read, and forwarded the letter to the Parole Board. Murphy asserts that the Board relied on the contents of the letter when it decided to deny him parole. The Board denies such an allegation.

Murphy became eligible for parole in the spring of 1991. He made an initial appearance before the Parole Board on July 30, 1991. The Board denied his parole application. The Parole Board indicated in Murphy's "Case Disposition" that parole was denied to Murphy because of his (1) previous criminal history; (2) a pattern of similar offenses; and (3) poor history under parole/probation supervision. Further, the Board wrote that it had no objection to Murphy being transferred to a pre-release center. Soon after the "Case Disposition" was completed, Murphy was denied permission to attend pre-release because he did not meet the six month clear conduct requirement for placement in pre-release.

On September 9, 1991, Murphy filed a complaint pursuant to 42 U.S.C. § 1983 against the Parole Board and prison officials. He alleged that the Parole Board, acting in collusion with prison officials, violated his constitutional rights when it denied him parole.

3

The Parole Board moved to dismiss Murphy's complaint for failure to state a claim. Additionally, the Board moved to suspend discovery until the court ruled on the motion to dismiss. The District Court granted the Board's motion to suspend discovery and then dismissed the complaint.

In his Order of Dismissal, the District Judge did not address Murphy's allegations that his mail was illegally opened and sent to the Parole Board. However, the court did address Murphy's other claims: (1) that he was denied a liberty interest in parole without due process of law; and (2) that the Board's reasons for denying Murphy parole were arbitrary because they were based on an improper consideration of Murphy's mail, they and did not comply with the parole statute.

The District Court concluded that, contrary to Murphy's assertions, he was afforded minimal due process at the parole hearing. Further, the court concluded that the Board's reasons for denying Murphy parole were not arbitrary, but rather were based on requirements of the parole statute, § 46-23-201, MCA.

The court ordered the dismissal of Murphy's complaint, pursuant to Rule 12(b)(6), M.R.Civ.P., on grounds that he failed to state a single claim for which relief could be granted. Murphy appeals from this judgment.

I

Did the District Court err when it dismissed Murphy's complaint for failure to state a claim?

4

## STANDARD OF REVIEW

It is a well established rule in Montana that a complaint should not be dismissed for failure to state a claim unless it appears certain that the plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim. This test was established in *Conley v. Gibson* (1957), 355 U.S. 41, 45, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84, and has been endorsed repeatedly by this Court. *Mogan v. City of Harlem* (1987), 227 Mont. 435, 437, 739 P.2d 491, 493; *Proto v. Missoula County* (1988), 230 Mont. 351, 353, 749 P.2d 1094, 1096; *Busch v. Kammerer* (1982), 200 Mont. 130, 132, 649 P.2d 1339, 1340.

Under Rule 12(b)(6), M.R.Civ.P., a motion to dismiss has the effect of admitting all the well-plead allegations of the complaint. *Busch*, 649 P.2d at 1340. Further, when the district court considers a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and all allegations of fact therein are taken as true. *Mogan*, 739 P.2d at 493.

Murphy's first contention on appeal is that when the District Court denied his complaint for failure to state a claim, it failed to address all of his claims. Murphy asks this Court to consider the following claims that he contends the District Court ignored: (1) that prison officials illegally and unconstitutionally opened a letter Murphy wrote to another inmate; and (2) that prison

officials improperly forwarded the letter to the Parole Board which subsequently denied him parole. In addition, Murphy requests this Court to consider his claims that parole is mandatory, that he was denied his "right" to parole, and that the Board's reasons for denial of parole were arbitrary. Murphy contends that all of his claims state a cause of action that deserve to be heard by a jury.

## MAIL CLAIMS

Murphy does not state a claim for relief with regard to his first allegation on appeal that prison officials illegally and unconstitutionally opened a letter he wrote to another inmate. Both United States Supreme Court decisions and Montana State Prison Policy No. 16-001 permit, for security reasons, the opening of prison mail.

A prison policy or practice which provides that the prison may open and censor correspondence sent to or from an inmate does not violate the U.S. Constitution if it is "reasonably related to legitimate penological interests," such as security. *Turner v. Safley* (1987), 482 U.S. 78, 89, 107 S. Ct. 2254, 2261, 96 L. Ed. 2d 64, 79; *Thornburgh v. Abbott* (1989), 490 U.S. 401, 109 S. Ct. 1874, 1881, 104 L. Ed. 2d 459, 473.

Montana State Prison Policy No. 16-001 provides that general correspondence which is not privileged may be opened and read, if "it is from another correctional facility." MSP Policy 16-001, § II, C, 3(a). This provision furthers security interests of the

6

prison. It limits attempts by inmates to pass contraband, money, or escape plans.

If in fact prison officials opened the letter that Murphy wrote to another inmate at Montana State Prison while Murphy was housed at Yellowstone Detention Facility, the infringement on Murphy's limited First Amendment rights did not amount to a constitutional violation. Murphy is only entitled to those First Amendment rights that "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier* (1974), 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495, 501. Prison officials can open and censor mail to an inmate from another correctional institution for security reasons.

Murphy does not state a claim for which relief may be granted on his second allegation that prison officials improperly forwarded his letter to the Parole Board. Murphy alleges that prison officials and the Board conspired to deny him parole by orchestrating the transfer of this letter into Murphy's parole file. However, despite whether or not the letter should have been transferred, Murphy can show no causal relationship between the letter and denial of his parole. The part of the letter which Murphy claims was damaging was his statement that he "had a good time in pre-release." However, in spite of the letter the Parole

7

Board stated that it had no objection to his transfer back to a pre-release center.

We conclude that Murphy's allegations concerning the opening and forwarding of his mail do not state a claim for which relief may be granted. The failure of the District Court to specifically address these two allegations when it dismissed Murphy's complaint is harmless error.

## MURPHY'S OTHER CLAIMS

In addition to his "mail claims," Murphy asks this Court to consider his claims: (1) that pursuant to the parole statute § 46-23-201, MCA (1983), parole was mandatory, not discretionary as the District Court concluded; (2) that he has a "liberty interest" in parole that transformed into a "right" to parole because he allegedly satisfied all of the statutory requirements in § 46-23-201, MCA (1983); and (3) that the Board's reasons for denying him parole were arbitrary because they were based on an improper consideration of Murphy's mail, and they do not comply with the parole statute. Murphy does not appeal the District Court finding that he was afforded minimum due process.

The parole statute in effect at the time that Murphy committed his crimes in 1984 stated in pertinent part that:

> **46-23-201.** **Prisoners eligible for parole.** (1) Subject to the following restrictions, the board shall release on parole by appropriate order any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community:

8

. . . .

(2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner <u>shall</u> be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. [Emphasis added.]

In 1989, § 46-23-201, MCA, was amended to read:

**46-23-201. Prisoners eligible for parole.** (1) Subject to the restrictions contained in subsections (2) through (4), the board <u>may</u> release on parole by appropriate order any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community.

. . . .

(4) A parole <u>may</u> be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner <u>may</u> be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. [Emphasis added.]

Murphy's contention that parole is mandatory is erroneous and it fails to state a claim for which relief may be granted. Although the 1983 statute employs the mandatory word "shall" and it "'creat[es] a presumption that parole release will be granted' when the designated findings are made," *Board of Pardons v. Allen* (1987), 482 U.S. 369, 377-78, 107 S. Ct. 2415, 2420, 96 L. Ed. 2d 303, 312, the prerequisite findings in this case were not made. Thus, parole was correctly denied.

Under both the 1983 and 1989 statutes, there are three consistent prerequisites to parole that must be met or parole is denied. Upon application of either statute, the inmate will only be released on parole when the Board makes specific findings:

9

(1) that in the Board's opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or the community; (2) that the parole is in the best interests of society; and (3) that in the Board's opinion the prisoner is able and willing to fulfill the obligations of a law-abiding citizen. In this case, the Board specifically concluded that Murphy's release would be a detriment to the community.

The United States Supreme Court considered the Montana parole statute, § 46-23-201, MCA, in *Board of Pardons v. Allen* (1987), 482 U.S. 369. In that case, the Court held that the mandatory language "shall" contained in the parole statute created a "liberty interest" in parole which was protected by the Due Process Clause. Because there was a liberty interest in parole, Montana inmates were entitled to minimum due process in decisions of the parole board. Those procedures were set forth in a prior decision, *Greenholtz v. Inmates of Nebraska Penal and Cor.* (1979), 442 U.S. 1, 15, 99 S. Ct. 2100, 2108, 60 L. Ed. 2d 668, 680.

In 1989, the Montana Legislature amended the parole statute by inserting the word "may" in place of the word "shall;" as amended, the statue does not create a protected liberty interest in parole. *Maggard v. Wyrick* (8th Cir. 1986), 800 F.2d 195, 198. Despite the amendment, however, the three prerequisites to parole remained intact.

Murphy contends that if the statute in effect at the time that he committed his crimes had been applied to his situation, his liberty interest would have been preserved. Further, he asserts

10

that because he satisfied the requirements under the parole statute his liberty interest became a right to parole.

Murphy's contention fails to state a claim for which relief may be granted. The District Court applied the 1989 version of the parole statute to Murphy's situation. However, under either version of the statute, Murphy would have been denied parole. Murphy did not meet the three prerequisites to parole that are consistent in both statutes. Therefore, the Board could not release Murphy, nor was Murphy entitled to be released. Specifically, the Board found that Murphy could not be released without being a detriment to himself or the community and that his release would not be in the best interests of society. It based its opinion upon Murphy's: (1) criminal history; (2) pattern of similar offenses; and (3) poor history under parole/probation supervision.

In addition, it was the Board's opinion that Murphy needs further job or vocational training and chemical dependency treatment to enhance his success on parole. The Board believed such training and treatment would further insure that Murphy is willing and able to fulfill the obligations of a law-abiding citizen.

The reasons provided by the Board for the denial of parole are all proper and consistent with the parole statute in effect in 1983. For these reasons, Murphy's allegations: (1) that parole was mandatory; (2) that he was illegally denied a liberty interest; and (3) the Board's reasons were arbitrary, all fail to state a claim

11

for relief. Murphy is entitled to no relief under any set of facts which could be proven in support of those claims.

II

Did the District Court violate the ex post facto clause when it applied the 1989 version of the parole statute, § 46-23-201, MCA, rather than the version of the statute in effect at the time appellant committed his crimes in 1984?

Murphy contends that the District Court violated the ex post facto clause when it considered his complaint under the 1989 parole statute rather than the statute in effect in 1984 at the time he committed his crimes. We conclude (1) that there was no ex post facto violation, and (2) that upon application of either of the statutes, Murphy does not meet the three prerequisites to parole. Therefore, once again, he does not state a claim for which relief may be granted.

Federal courts have recognized that there is not an ex post facto violation when an inmate's parole release would have been denied under the former statute as well as the latter. *Maggard*, 800 F.2d at 197. An ex post facto law is one which "impose[s] a punishment for an act not punishable at the time it was committed." *Cummings v. Missouri* (1867), 71 U.S. 277, 18 L. Ed 356. Two crucial elements must be present to establish an ex post facto violation: (1) the law must be retrospective; and (2) the law must disadvantage the offender making the ex post facto challenge. *Weaver v. Graham* (1981), 450 U.S. 24, 29, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17, 23.

12

This Court addressed the issue of an ex post facto law in *State v. Coleman* (1979), 185 Mont. 299, 605 P.2d 1000. This case involved a change in the death penalty law. Citing extensively to the U.S. Supreme Court, our Court stated that:

> Simply because a statute operates on events antecedent to its effective date does not make the statute *ex post facto* . . . nor does such operation make a law prohibitively retroactive. . . . Thus the *effect* the statute will have must determine its validity with respect to *ex post facto* or retroactive inhibitions.

*Coleman*, 605 P.2d at 1010.

The District Court applied the 1989 parole statute to Murphy's complaint rather than the statute in effect in 1984 at the time Murphy committed his crimes. In this sense, the law was applied retroactively. However, Murphy was not disadvantaged by the application of the 1989 law. Murphy would have been denied parole under either statute. Although the 1983 statute uses the word "shall" and the 1989 statute uses the word "may," both statutes are consistent in that they mandate that the inmate must meet three prerequisites before parole is granted. The Parole Board did not believe Murphy could be released without being a detriment to himself or the community. Murphy did not satisfy the prerequisites. Thus he was denied parole. Because the change in the statute did not have an effect on Murphy's situation, there was no ex post facto violation.

### III

Did the District Court err when it suspended discovery until the court ruled on a motion to dismiss the complaint?

13

Murphy contends that his complaint should not have been dismissed without allowing discovery. He asserts that the only way he could substantiate his claims for relief was to use the discovery process to demonstrate the arbitrary actions of the Parole Board. However, as previously discussed, Murphy could not recover even if he proved the allegations in his complaint were true. Therefore, he was not entitled to discovery to prove his allegations.

The judgment of the District Court is affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

December 30, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kevin Murphy
700 Conley Lake Rd.
Deer Lodge, MT  59722


David L. Ohler and James Obie
Dept. of Corrections and Human Services
1539-11th Ave.
Helena, MT  59620-1301


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy